## J. D. Bentley v. Ballard & Herring.

## J. D. Bentley and Serilda Bentley v. Same.

(Decided February 10, 1915.)

Appeals from Pike Circuit Court.

Landlord and Tenant—Fires—Repairs.—Where there was no express covenant on the part of the tenant to repair the premises or to keep them in repair, and the obligation was to surrender the premises at the end of the term in as good condition and order as they were at the time of the contract, does not impose upon the tenant a liability to repair or restore in the event of destruction of the premises, or a material part of them, during the term, by fire, unless the fire was the result of default or negligence of the tenant.

J. S. CLINE for appellants.

J. M. YORK for appellees.

Opinion of the Court by Judge Hurt—Affirming.

These suits were instituted in the Pike Circuit Court; the one is that of J. D. Bentley against Ballard & Herring, and the other that of J. D. Bentley and Serilda Bentley, his wife, against Ballard & Herring. These suits were consolidated by an agreed order in the circuit court and heard and tried together. In the first named suit J. D. Bentley claims that, under a verbal contract, he let to rent to Ballard & Herring a store house and a portion of a barn and some adjacent lands, and under the contract of rental, Ballard & Herring agreed that they would take good care of the premises and would be responsible for all damages that might occur to him during their occupancy of the premises, and would leave the premises at the end of their term in as good repair and condition as they then were, and just as they then were; that thereafter Ballard & Herring erected at the rear of the store room a building which they used for a cook room and kitchen; that they negligently and carelessly constructed the cook room, and put the stove pipes through the roof of the house without any flues in which to place the pipes, and that the roof of the house was made of tar paper and the walls covered with paper, and that the improper and negligent manner in which they had constructed the house and located the stove pipes, and negligent use of the

house and premises, the cook room caught on fire from said improper fixing of the stove pipes, and that the fire was communicated to another store house which appellant had near by, and from that it was communicated to the store house which he had rented to Ballard & Herring, and that it resulted in all of the building being consumed, and, in addition thereto, twenty apple trees which grew on the land adjacent to the store building, and that said buildings so consumed were reasonably worth the sum of $2,900.00, and that Ballard & Herring had failed to perform and keep their contract with him, by failing to take good care of the premises leased to them, which resulted in the burning of the buildings, and had further failed to keep their contract by failing to pay the damages which happened to him during their occupancy of the premises, and by not leaving the premises in as good condition as they were at the time of the contract, and for that reason asked a judgment against them for the value of the store houses burned, in the sum of $2,900.00.

In the suit of J. D. Bentley and Serilda Bentley against Ballard & Herring, substantially the same allegations were made in the petition as to the contract between J. D. Bentley and Ballard & Herring, and it was further alleged that Bentley and his wife, as partners, were the owners of a stock of goods placed in a store house near to the one rented to Ballard & Herring, and that by reason of the gross negligence and carelessness of the defendants in the construction of the cook room, and their negligence in their use of the building, that the building caught on fire, as stated above, and that the stock of goods owned by them was consumed by the fire, and that same was reasonably worth $3,000.00, and asked to recover a judgment for that sum against Ballard & Herring.

Ballard & Herring filed answer in each of these cases, in which they traversed the allegations in the petitions regarding the terms of the contract, and denied any negligence in the erection or the use of the buildings, and further plead, that after they had erected the cook room, that the plaintiff, J. D. Bentley, against their consent, erected the store room in which the goods were consumed, upon land which he had leased to them, and built his store house very close to their cook room, and that by reason of that fact the store house in which the

goods were kept took fire and burned, and communicated the fire to the other store house, and that but for the fact of his carelessly and negligently and wrongfully taking possession of a portion of the land which he had leased to them, and negligently building his store house near to said cook room, neither the store house in which the goods were would have been burned, nor the one which he had let to them. The affirmative allegations in these pleadings were traversed, and upon a hearing of the two suits together, the jury found a verdict for the defendants. At the close of the appellant's evidence the appellees moved the court to direct the jury peremptorily to find a verdict for them, which the court overruled, and to which appellees excepted.

The appellants asked the court to give an instruction to the jury which, in substance, was, that if the jury believe from the evidence that the appellees negligently and carelessly erected a cook room, and by reason thereof said cook room caught on fire, and the fire was communicated to the store buildings, and they were burned, to find a verdict for the appellant, J. D. Bentley, in their discretion, not exceeding $2,900.00. The court refused to give this instruction, to which the appellant excepted, and upon its own motion gave instructions A, one, two, three, four, five, six and seven. To the giving of all of these instructions the appellants objected, and their objections being overruled, took proper exceptions. The appellants filed grounds in each of these cases, and moved the court to set aside the verdict of the jury, and to grant a new trial, which motion the court overruled in each case, and the appellants took exceptions thereto, and they now appeal to this court.

In order to determine what the court should have done upon the trial of these cases as regards instructions to the jury, it becomes necessary to make a statement of what the evidence conduced to show, and we will first state the testimony adduced for the appellants, so far as same may be necessary for the purpose in hand.

The appellant, J. D. Bentley, stated that he had first leased the old store building and a portion of the barn, and certain lands adjacent thereto, to appellees for the period of one year, and entered into a written contract with them; that at the end of the time for which the property had been leased that he made a new contract for the letting of these premises to Ballard & Herring,

and in regard to what the contract was, which was verbal, he states as follows:

"Q. After twelve months expired was there another contract entered into? A. Mr. Ballard came into my store there and asked me to stay longer in the property, that he wasn't done; I told him under the conditions he couldn't stay; he asked me why. I told him he hadn't done what his first contract said; that my place was all littered up, and the barn, I couldn't get to it to feed, and we had had a fire in a room, and I didn't know when they would have another one in the condition the cook room was in. Q. Tell the jury if there was another contract entered into? A. He turned around to Mr. Buckner and told him to go ahead and clean up the lot, told him to fix up the barn where the holes were around it, and to clean up the place as he was to and get the litterment all cleaned up. I told him if he would leave me as I was then he could stay, and he said alright, he always done that wherever he went; he would leave me as I was, and I could make my bill out, and the rent when he left. * * * Q. I believe you say that the written contract made out with Ballard & Herring expired? A. Yes, sir; about the time it was out, he came in, a day or two before or at the time, he came in the store and named it, and said he was going away about the time it was out, and told me he was going away, and that he wanted to stay there further until he got done, that he wasn't done yet. Q. And he further said to you he would leave your property in as good shape as he found it? A. I told him the conditions he could stay, that the first contract hadn't been filled, that the barn wasn't cleaned up; he says, yes, I will leave you just as good as I find you, I always do that wherever I go."

On cross-examination the same witness made the following statements:

"Q. What did you ask him? A. Mr. Ballard came in and asked me about staying, and I told him the conditions he could stay; he asked me why; I told him he hadn't complied with the first contract about the barn. I couldn't get to it to feed my stock, and I couldn't cultivate the land; and I says, you have had one fire down there, and you may have another one, this cook room may burn us up at any time."

Testifying in regard to the first contract on cross-examination, J. D. Bentley stated as follows:

"Q. How did that description go? A. He was to have the store lot and he was to have around the foot of the hill at the back of the bottom, and up the hollow at the back of the store house, and all the barn on the left; I just donated him the barn, and donated land to build on; would not charge for that; he was to leave the buildings and leave the place in as good shape as he found it when he left. Q. Was that in the original contract? A. It ought to have been. Q. Was it? A. That was the agreement; I showed him where he could build. Q. Didn't you tell the jury while ago that was only in the new contract you made to Mr. Ballard? A. I don't think I did. Q. Are you certain you didn't? A. I told him there was a new contract and how it was. Q. Did you tell the jury in the first contract defendants agreed to leave the land just like they got it? A. That was the understanding both times, to leave it as they found it. Q. Both contracts? A. Yes, sir."

The foregoing is what the appellant states was embraced in the contract under which he let the store house and lands to the appellees.

From other evidence given by him and his witnesses it develops that the first contract, which was in writing, was made about the first of April, and was to continue one year, and among other terms of that contract was that all buildings which the appellees erected upon the lands, at the end of their one-year lease, were to be left on the land by them, and become the property of the appellant, J. D. Bentley. The parol contract upon which he sues, was made, as he testifies, about the time that the previous contract expired.

It also appears that shortly after appellees took possession under their first contract they built a good many houses upon the land, and among others, between the old store house which they received under the contract and the hill behind it, and from twelve to fifteen feet from it, they erected a building to be used as a cook room and dining room, and two other small rooms adjoining them to be used as sleeping rooms.

According to the testimony for the appellant, the cook room was covered with tar paper and the sides of the walls upon the inside were covered with paper. In this room were two stoves, the pipe of one of which pro-

truded through the roof of the house, and the pipe of the other, according to appellant and some of his witnesses, protruded through the side of the house, and, according to some other of his witnesses, went out through the roof of the house. According to the testimony for the appellant, the appellees did not provide any flues in the cook room for the stove pipes, and the appellant called attention of the manager of the appellees to the stove pipes and the want of flues, and offered to furnish brick with which to build a flue, and warned the manager that there was danger of the building taking on fire on account of these flues.

Shortly after making the first contract in April appellant proceeded to build him another store house about ten feet away from the one he had rented to the appellees, and he testifies that he had built the new store house and put in a stock of goods before the appellees began to use the cook room complained of.

Some time in the month of May, after the written contract for the rent of the place had expired, which did so about the first of April, the cook room caught on fire and was consumed. The fire communicated itself to appellant's new store house, because it was only a few feet away, and from it to appellant's old store house, and both of them were consumed.

The question to be determined is what liability was put upon the appellees by the terms of the parol contract, under which they were holding at the time of the destruction of the buildings by fire, and upon which the appellant bases his suit. Clearly, appellant could not rely upon any provisions of the written contract as creating any liability upon the appellees for the loss of the property by fire, because that contract had expired some time before, and no damage had been incurred by the appellant during the time that contract was in force, either from the occupancy of the premises or by reason of the faulty or negligent manner of the construction of the cook room, nor from any negligent use of it during that time, because during the continuance of that contract there was no loss to the appellant of any kind.

It seems, from the evidence of the appellant, that the appellees had used the cook room complained of for a cook room, and with the stove pipes situated in it as complained of, and with any defects that might have been

in the building of the house, that might cause it to ignite with fire, for nearly a year before the time that it was consumed. Appellant was fully aware of this condition of the house, and what it was used for during all of this time, because his evidence discloses that he went into the cook room to caution the servants of the appellees who were in the cook room doing the cooking, in regard to the liability of fire from it, and he states that he saw how it was built, and furnished, and the manner in which the stove pipes were fixed in the house, and with full knowledge of these conditions, and that the cook room was to be used as theretofore, he relets the property to the appellees for a longer time, without requiring them to make any change in the construction or the use of the cook room. It appears that under the first written contract that at its expiration this cook room became the property of the appellant and he was at liberty to repair it and to change its construction, if he had so desired. Thus, we have the appellant knowing all about how the cook room was constructed, and the defects in it which he complains of, reletting it after several months of use by the appellees for the purpose of a kitchen, and for the same purpose for which it had been theretofore used. It was in close proximity to his buildings, and he could not fail to be fully aware of all of the dangers arising from its use as a cook room, if there was any such danger, and we do not see how he could be heard to complain of any fire which originated from it by reason of the manner in which it was constructed. The only liability which could attach to the appellees under such a statement of facts, so far as relates to the destruction of the buildings by fire would be from their failure to use ordinary care in the use of the building to prevent fire, in the condition that it then was.

In 24 Cyc., 1089, the following rule is laid down as applying to such contracts as appellant testifies he had with the appellees: "However, where there is no expressed covenant in the lease requiring the lessee to repair the premises or keep them in repair, an expressed stipulation binding the lessee to surrender the premises, at the expiration of the term, in as good order and condition as the same now are, reasonable use and wear and tear excepted, is construed to be merely the expression of an obligation which the law would imply

in its absence, and does not impose upon the lessee a liability to repair or to restore in the event of destruction of the premises, or a material part thereof, during the term, by fire or other unavoidable accident. Now, however, in some jurisdictions, by statutory enactment or judicial construction, no covenant or promise by a lessee to keep and leave the demised premises in good repair will require him to rebuild, if the premises are destroyed by fire or other casualty, without fault or negligence on his part, unless the language of the lease shows plainly that it was the intention of the parties that he should be so bound.''

According to the terms of the contract between the appellant and the appellees, there is no expressed covenant to repair the premises or keep them in repair, and the obligation which appellant says the appellees took upon themselves was to surrender the premises, at the end of their term, in as good order and condition as the same now are, and, in the language of the appellant, "he would leave me as I was."

Section 2297 of the Kentucky Statutes provides: "That unless the contrary be expressly provided for in the writing, no agreement of the lessee that he will repair or leave the premises in repair shall have the effect of binding him to erect similar buildings, if, without his fault or neglect, the same may be destroyed by fire or other casualty, etc.''

Under the facts of this case no fault or neglect could be imputed to the appellees for the use in a proper manner of the cook room, when it was in the same condition as it was when appellant let it to them. In order to make them liable for the damages suffered by the appellants it would have to appear that the appellees were guilty of some neglect, which resulted in the fire, and there seems to be a total absence of proof to that effect, the evidence showing simply that the servant of appellees was cooking in the room, and, having stepped our for a few moments in attending to her duties in preparing vegetables to be cooked, when the building was discovered to be on fire.

While the evidence for the defendants tends strongly to show that the pipes were arranged under the direction of the appellant, and in the manner in which he directed them to be fixed, but we have arrived at the conclusion, without considering anything except the evi-

dence for the appellants, that the motion of the appellees for an instruction to the jury directing them to find 'a verdict for appellees at the close of the evidence for the appellants ought to have prevailed.

While the instructions given by the court were erroneous, but, inasmuch as the appellees were entitled to have the jury to find a verdict for them, the instructions were more favorable to appellants than they were entitled to, and hence could have been in no wise prejudicial to them.

The errors in the exclusion of evidence complained of by appellants do not relate to anything except the measure of damages for the losses sustained, and the appellees, not being liable for the losses, were not prejudicial to appellants.

It is, therefore, ordered that the judgments appealed from be affirmed.