## Couch's Adm'r v. Black.

Nov. 20, 1945.

M. C. Begley, T. T. Burchell and J. H. Asher for appellant.

A. T. W. Manning and R. W. Keenon for appellee.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

On November 23, 1940, Manon Couch and his son John, Gus Woods, Pleasie Couch, Raymond Collins, and Charlie Woods were traveling, in a 1931 Chevrolet coupe, on Highway 80 between Hyden and Manchester, in the direction of the latter city. The coupe was owned and being driven by Manon Couch, and he and his son John, Gus Woods and Pleasie Couch were riding in the front seat, while Raymond Collins and Charlie Woods were riding in the rumble seat. At a point near the residence of Hal Bowling the coupe was overtaken and passed by one of appellee's busses, which continued its course for a short distance and then stopped to take on a passenger. Presently following the passing of the bus, the coupe passed from its right to its left side of the road, where it turned over and rolled down the side of the road's embankment and into a fence. The accident resulted in the death of John Couch and in personal injuries to the others. In May following, Manon Couch qualified as administrator of his son's estate and filed the present ac-

tion for damages. At the same time he and Pleasie Couch and Raymond Collins severally sued to recover damages on account of their respective personal injuries. In May of 1941 there was a joint trial of all the cases, but the jury was unable to reach a verdict. In March of 1942 there was a separate trial of the administrator's case, and again the jury was unable to agree. Finally, in February of 1944, this, the administrator's, case was tried again, and this time the jury rendered a verdict in favor of the defendant. The administrator's motion and grounds for a new trial having been overruled, he has prosecuted this appeal.

The appellant relies upon and argues only one ground for reversal—erroneous instructions. The appellee counters with the argument that he was entitled to a peremptory, and that on this account it is immaterial that the instructions which were given may have been incorrect.

The soundness of the appellee's second contention is affirmed by innumerable decisions among them being Lilly v. Marcum, 214 Ky. 514, 283 S. W. 1059; Bentley v. Ballard & Herring, 162 Ky. 622, 172 S. W. 1079. A determination of the soundness of appellee's first contention requires an examination of his petition and of the evidence—both that of the appellant and that of the appellee.

The petition's allegation of negligence is not general, but specific, its fair import being that the bus was brought to a stop just as soon as it had succeeded in getting in front of the coupe. The exact language of the allegation is this: " * * * and the bus owned, managed and maintained by the defendant herein and operated by one of his agents, servants and employees, proceeding in the same direction on one of its regular runs between Hyden and Manchester, overtook the automobile in which deceased were riding, passed the same and pulled and propelled said bus in front thereof and stopped his said bus on the right hand side of the road immediately in front of the automobile in which deceased were riding, and so close thereto that the driver could not slow down said automobile to the extent of enabling him to pass said bus to the left, and attempting to do so and thus avoid running into the rear of said bus the driver of said automobile ran same over and down an em-

bankment, turned over and crushed and bruised the head, body, arms, limbs and person of said John M. Couch to such an extent that he languished and died thereby, * * *,''

No testimony was offered on behalf of the appellant except that of himself and that of the other occupants of his car. His personal testimony was: ''Well the bus pulled up by the side of me, I was making around thirty eight or forty miles an hour with my car, and the bus pulled up by the side of me and he blowed his horn and he began crowding me over to the right of the road and I thought he was going to hit my car, the way he was cutting, well I had to crowd over on the right hand side of the road a little I suppose on the shoulder of the road and he cut across kindly in front of me and I straightened my car up expecting him to go on but he stopped and slowed down and pulled across instead of going on and caused me to cut to the left to go around him and I had to cut too far, cut over the side of the fill there and when I straightened up my front wheels I run around that fill, about some twelve or fifteen or eighteen feet possibly twenty feet and my left front wheel hit a rock there in the fill, in the edge of the fill and bursted my tire and then the car began rolling, that was about parallel with the front of his engine or a little bit more than parallel from where the bus was sitting.''

The testimony of the other witnesses was substantially the same as that given by the appellant.

On the other hand eleven witnesses testified on behalf of the appellee. These witnesses testified with respect to the respective locations of various land marks and physical objects, and as to the distances between them. According to their testimony the bus passed the coupe at a point, identified by natural objects, several hundred feet from the point where the coupe went off the road. They also testified that after the bus had cleared the coupe it swung back to the right side of the road and continued its course in a normal manner until it got to within some 200 or 300 feet of a sycamore tree, where a Mrs. Wagers was waiting for the purpose of taking passage, at which time it began to slow down, finally stopping at the sycamore. Those who testified upon the point said that the stop was a gradual one. The testimony was to the further effect that from the point

where it was overtaken and passed, the coupe followed the bus, on the right side of the road, but that it began to wobble, and that when it reached a point some several feet—variously estimated—from where the bus stopped at the sycamore to allow Mrs. Wagers to get on, and at about the time the bus stopped, the coupe veered to the left side of the road and went over the embankment, finally landing against a fence.

The appellant introduced no testimony to contradict that on behalf of the appellee. In fact, he offered no rebuttal testimony at all.

Under a general allegation of negligence the plaintiff may prove any act of negligence; but when he specifies the negligence on which he relies, or when he makes a general allegation of negligence and follows it by an explanatory charge of specific acts, he will be confined, both as to evidence and to recovery, to the specific acts alleged. Wigginton's Adm'r v. Louisville R. Co., 256 Ky. 287, 75 S. W. 2d 1046; Braden's Adm'x v. Liston, 258 Ky. 44, 79 S. W. 2d 241; Davidson v. Perkins-Bowling Coal Co., 255 Ky. 649, 74 S. W. 2d 1. It is an equally well established and universally followed rule that a plaintiff is not entitled to go to the jury if his evidence consists of statements of alleged facts which are inherently impossible and at variance with well established and universally recognized physical laws, or if it is not of that relevant consequence, quality and fitness to induce conviction. Louisville & Nashville R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471.

Since the uncontradicted evidence shows that the coupe was overtaken and passed by the bus at a point—identified by natural objects—several hundred feet both from the point where the bus stopped at the sycamore tree and from the point where the coupe veered to the left side of the road and went over the embankment, it follows that the appellant's evidence was not of that relevant consequence, quality and fitness to induce a conviction that the accident happened as specifically alleged in the petition, or that it would have been possible for it to so happen.

In fine, the appellant did not sustain the burden which rested upon him and the court should have instructed the jury in favor of the appellee.

Judgment affirmed.