## Louisville Railway Company v. Broaddus' Administrator.

(Decided April 26, 1918.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Trial—Province of Jury.—Where an action is properly triable by jury, and there is evidence supporting both the affirmative and negative of an issue, it is the province of the jury to determine the issue, and the court should not invade its province by taking away the determination of the issue from it.

2. Street Railroads—Actions for Personal Injury—Trial—Instructions—Lookout.—In actions for personal injury, where there is evidence to justify the giving of an instruction authorizing the jury to find for defendant on account of the contributory neg-

ligence of the plaintiff, and the conditions were such, that the defendant owed the plaintiff a lookout duty, the instruction upon contributory negligence should be modified by an instruction, permitting the plaintiff to recover, although he was negligent, if the defendant saw, or by the exercise of ordinary care, could have seen the peril of plaintiff in time to have avoided injury to him, by the exercise of ordinary care, and negligently failed to do so, if there is evidence upon which to base the latter instruction.

3. Evidence—Declaration by Actor in Transaction—Competency.— A declaration made by one of the actors in a transaction, contemporaneous with its occurrence and at the place of its occurrence, and which is illustrative of the manner in which it occurred, or the cause of it, is competent testimony, as to the manner and cause of the affair.

ALFRED SELLIGMAN, STRAUS, LEE & KRIEGER and HOUSTIN QUIN for appellant.

EUGENE R. ATTKISSON, LEWIS T. HANEY and BARRETT, ALLEN & ATTKISSON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

On a morning, about eight o'clock, Mortimer Logan Broaddus, a lad, about six years of age, was run over and killed, by a car, of the appellant, on Second street, between Oak street and Ormsby avenue, in the city of Louisville. This action was instituted, by the administrator of the deceased boy, to recover the damages suffered, by his estate, by reason of his death. The basis of the action, as alleged in the petition, was that the car, which was propelled by electric power, was caused and suffered by the negligence and carelessness of the servants and agents of the appellant to run down the decedent and destroy his life. The defense set up by the appellant, in its answer, was a traverse of the material averments of the petition, and contributory negligence on the part of the decedent, which contributed to the cause of his death to such extent, that, but for which, he would not have been injured. Second street runs north and south. Oak street intersects it toward the north, and Ormsby avenue to the south, of the point, where the tragedy occurred. The distance between Oak street and Ormsby avenue is seven hundred and twenty-four feet, and on both the east and west sides of the street throughout the block, it is closely occupied by dwelling houses. The appellant, Railway Company, has two

tracks running near the center of Second street. The one nearer to the east side of the street is called the north bound track and the one nearer to the west side is called the south bound track. The east rail of the north bound track is ten feet and eight inches from the curbing on the east side of the street. There is a distance of four feet and six inches between the two tracks, and the tracks are each five feet in width, and from the west rail of the south bound track to the curbing upon the west side of the street is ten feet and ten inches. The decedent, in company with his brother, who was two years older, started to school, upon that morning, from their home, which was the nearest house in the block to Ormsby avenue, on the west side of Second street. When they had arrived near the center of the block, the decedent crossed the street to the dwelling of Mr. Wellman to secure the company of his small son, while the brother of decedent went to the dwelling of Mr. Wayne, on the west side of the street, to secure the company of a lad at that place, who usually accompanied them to school. The decedent, when he arrived at Wellman's, ascertained that the little boy there would not attend school upon that day, and when he attempted to return across the street, going diagonally across it, with his face toward the southwest, and as he crossed the south bound track, he was struck by appellant's car, which was proceeding toward the south, and instantly killed. As stated above, there were no specific acts of negligence alleged as the cause of the death of the boy, but the charge was one of general negligence and the evidence, as to the existence of any negligence, which resulted in the death of the boy, and the inferences to be drawn from the physical facts proven and other circumstances were very contradictory. The theory advanced by the appellee, as to the cause of the death, was, that the car was being operated at an unreasonable degree of speed, and that the motorman failed to maintain a proper lookout; that the decedent was attempting to cross the street and did not see nor observe nor have knowledge of the presence of the car, and came upon the track oblivious of the danger at hand, and that the motorman saw the peril in which the lad was, or by the exercise of the duty of reasonable care in keeping a proper lookout should have seen him and the peril in which he was, in time, by the exercise of ordinary care, to have prevented injury to him by giving proper warn-

ing or to have stopped the car before it struck the decedent; while the appellant insists, that the car was being operated at a reasonable speed and under control, and that a proper lookout was maintained, but. that the decedent came suddenly around the rear of a north bound car, which was passing at the time, and came upon the track about eight feet in front of the south bound car, and that the motorman did not know of the purpose of the lad to come upon the track, in front of the car, or would attempt to cross the track, until he saw him about eight feet in front of the car; that he immediately gave warning by ringing the gong, cried out to him, applied the brakes and used every endeavor within his power to stop the car, but that the proximity of the lad to the car was such, that he was unable to stop the car until it ran over him, and that the killing was unavoidable, and was not caused by any negligence of the motorman.   A trial of the action before the court and a jury resulted in a verdict of the jury for the administrator for the sum of five thousand, five hundred dollars, in damages, and a judgment of the court in accordance therewith. The appellant's grounds and motion for a new trial having been overruled, it has appealed to this court.

Four grounds are insisted upon by appellant for the reversal of the judgment:

First: The court erred in overruling the motion for a directed verdict in favor of appellant.

Second: The court erred in instructing the jury that it was the duty of the appellant to operate its car at a reasonable rate of speed and to have it under control, and in directing the jury to find a verdict for appellee, if the appellant failed in that duty, if such failure was the cause of the lad's death.

Third: The court erred in giving to the jury instruction No. 3.

Fourth: The error of the court in the admission of incompetent testimony, which was objected to at the time.

(a.) As to the first ground for reversal insisted upon, it is useless to recite the well known rule, that in actions triable by jury, when there is evidence to support both the affirmative and negative of an issue, it is the province of the jury to weigh the evidence and determine the issue, and that under such circumstances, the court should not invade the province of the jury by

taking from it the determination of the issue, and where the evidence is contradictory, it is peculiarly the province of the jury, to determine the truth, as to the issue. While there was evidence, by probably, the greater number of witnesses, that the car was moving at the rate of speed usually employed in the areas between the points of intersections with other streets, the most of these witnesses were unable to give any opinion as to how great the speed was or how many miles per hour the car was proceeding. The motorman and conductor testified that the car was moving eight or ten miles per hour, but the motorman, also, said, that it was being operated with a full current of electricity, and while he testified that he attempted, with all the means at hand, to stop the car, when he discovered the decedent in front of it near the north bound track, and that the car could be and was stopped within fifty feet, the great weight of the evidence was to the effect that it did not stop until it had gone between one hundred and forty and one hundred and fifty feet from the place where it collided with the decedent, from which it could be inferred, that the car was not being operated at a reasonable rate of speed or under reasonable control, under the circumstances existing. Certain other witnesses describe the movement of the car as "very fast," and "exceedingly rapid." Hence, the only basis for the argument, that there was no evidence, which conduced to prove that the speed of the car contributed to the death of the deceased, is the insistence by appellant, that whether the car was going fast or slow, the death could not have been avoided by the servants of appellant. If, however, the motorman saw the peril, in which deceased had placed himself, or by the keeping of a proper lookout would have discovered it, in time, to have given him warning, so that he might have saved himself, or the motorman to have stopped the car, before coming in contact with deceased, but was unable to do so because of the unreasonable speed of the car, the appellant would have been liable for the death, and there was evidence and inferences from facts proven to support such conclusion. It has been held more than once, that the ones operating an electric car or train can not be excused for an injury to one who suddenly and unexpectedly appears upon the track, if the car is being operated at an excessive and unreasonable speed, unless it appears that the injury

would have occurred, if the car had been moving at the proper speed and a sufficient lookout maintained. Louisville Railway Co. v. Yessell's Admrx., 159 Ky. 664; Louisville Railway Co. v. Gaar, 112 S. W. 1130; Louisville Railway Co. v. Byar's Admrx., 130 Ky. 437; Netter's Admr. v. Louisville Railway Co., 131 Ky. 678; Hymarsh's Admr. v. Paducah Traction Co., 150 Ky. 109. The evidence of the motorman is to the effect that he was keeping a steady lookout upon the track in front of the car and upon the adjoining street, but he failed to see, according to his statement, the decedent when he left the sidewalk upon the east side of the street and proceeded diagonally across the street toward the southwest, in the direction of the track, with every appearance of being unaware of the approaching car, and with the purpose to cross the track in front of the car. The motorman says that he saw decedent, when he was standing upon the curbing, upon the east side of the street, in front of Wellman's, but, just then a north bound car passed between him and the point, where decedent was standing, and when he next saw him, he appeared in the wake of the north bound car, and not more than eight feet in front of the car, which was going toward the south, but that the lad was about the rails of the north bound track and had not yet come upon the track in front of the north bound car. A serious controversy appears, in the evidence, as to whether or not a north bound car passed, at that time, between the motorman and the decedent. As many as two witnesses declare that a north bound car did not pass at that time, while others fix the time of its passage at about that time or just before the car struck deceased. Others evidently confused the passage of a car upon the north bound track, at that time, with a car, which the south bound car met between Oak Street and the point of the tragedy, and some of them confused it with one, which arrived just after the tragedy. If a north bound car did not, at that time, pass and thus cut off the view of the motorman, as other witnesses saw deceased leave the side walk and proceed across the street, these facts would be evidence, which would tend to prove that the motorman, whose duty it was to keep a lookout, either saw the lad approaching the track and failed to take any steps to avoid injuring him by giving warning or reducing the speed of the car or stopping it, if neces-

sary; or else was failing to maintain a reasonable and sufficient lookout, at the time, and, for that reason, did not see him, until just as he came in contact with it. A witness, who was riding upon the front of the car, saw the lad leave the curbing, on the east side of the street, but, gave him no further attention, until he again saw him about twenty feet in front of the car on the north bound track. The north as well as the south bound car were each forty-two feet in length. From inferences, which can be drawn from other facts in proof, it could be concluded, that when the lad appeared in the street near the track, with the evident purpose of crossing it, and with his face toward the southwest, and oblivious of the approach of the car, that, he was then at such a distance from the car, that it could have been stopped by the exercise of reasonable care before arriving at the place of contact with him. It thus appears that there was evidence from which the jury could have concluded, that the appellant's car was not operated at a reasonable degree of speed, under the circumstances, and was not under such control as the situation demanded for the reasonable safety of those using the streets, and that the motorman was not maintaining such a lookout as his duty demanded, and that by reason of such negligence the lad was killed, and there was, also, evidence from which the contrary might have been concluded. There was evidence, which tended to show and from which it might have been concluded, that the negligence of the lad contributed to his death, and that it would not have occurred but for his own negligent acts, although the servants of appellant were, also, negligent, and there was evidence from which the contrary might have been concluded. There was evidence, which tended to prove that, although the lad was guilty of negligence, that the motorman might have or could have seen, by exercising ordinary care in maintaining a proper lookout, the peril, in which the lad had placed himself, and with reasonable care have avoided his death, but there was evidence, which tended to prove the contrary to be the fact. Hence, these were all questions for the jury, and the motion for a directed verdict was properly overruled, both at the conclusion of the evidence for appellee and at the close of all the evidence.

(b.) The second ground relied upon for a reversal of the judgment is, that the court was in error in direct-

ing the jury, in the first instruction, that it was the duty of the servants of appellant to operate the car at such a speed and to have it under such control as ordinary care for the safety of persons using the streets reasonably demanded. It is not contended, that it is not a primary duty of those, who engage in the operation of electric railway cars upon a line of road, within the limits and upon the streets of a city, and at such a place, as where the death of decedent occurred, where the street was in constant use by vehicles and pedestrians, to operate the car at such a speed and to maintain over its operation a reasonable control, such as ordinary care for the safety of vehicles and persons reasonably demand, considering the time, place and circumstances, but, it is insisted that there was an entire lack of evidence tending to prove that the car was operated at an unreasonable speed or that the motorman did not have it under such control as was reasonably necessary, and although it might have been operated at an unreasonable speed, under the circumstances, that the death of the boy was caused by his negligence in coming upon the track in front of the car so suddenly and so near to it that it would have been impossible to have given him warning or to have stopped the car, and thus saved him, and hence the speed of the car was not the proximate cause of his death, and there was no evidence upon which to base an instruction touching the duty of the motorman in regard to the operation of the car and its control, or to sustain a verdict on account of a violation of that duty. The reasons given for denying the motion for a directed verdict, as stated above, show this contention to be untenable.

(c.) Among other instructions given to the jury was instruction No. 2, which, in substance, directed the jury, that it was the duty of the decedent, for his own safety, to exercise that degree of care usually exercised, under circumstances alike or similar to those shown by the evidence, by ordinarily prudent children of his age, intelligence and experience, to learn of the approach of the car and to keep out of its way, and if he failed to exercise for his own safety such degree of care, and by reason of the failure helped to cause or bring about his death, and that he would not have been injured, except for such failure upon his part, to find for the railway company, although the motorman in charge

of the car was, also, negligent by failing to perform the
duties incumbent upon him, which duties were enumer-
ated in a previous instruction, to which there was no
objection made, except, as stated above, with reference
to its direction to the jury touching the speed and con-
trol of the car.

By a third instruction the jury was in substance ad-
vised, that, although the decedent failed to exercise,
for his own safety, the degree of care required of him
by the second instruction, yet, if it believed from the evi-
dence that the motorman, after the failure of the de-
cedent to exercise the degree of care for his safety re-
quired by the second instruction, if he did so fail, saw
or by the exercise of ordinary care, in maintaining a
lookout, could have seen the peril, in which the lad had
placed himself, by his own negligence, in time to have
enabled the motor-man, by the use of the means at his
command and by the exercise of ordinary care on his
part, to have prevented or avoided the collision between
the car and the decedent and negligently failed to do so,
and that such failure on the part of the motorman, if
he did so fail, caused the collision to occur or brought
it about, that the jury should find for the appellee.

It is insisted that the giving of instruction No. 3, is
erroneous and is not the law to be applied to the facts
as proven to have existed. The basis, upon which this
contention is made, is, that it was a primary duty, which
was incumbent upon the motorman, to maintain a suffi-
cient lookout and to exercise reasonable care to see per-
sons upon the track or near enough to it to be in danger
from the car and to avoid injury to them, whether they
were or were not guilty of negligence in failing to use
reasonable care for their own safety, and that the jury
was in substance so directed in the first instruction, and
that instruction No. 3, should not be given where such
primary duty exists, but is only applicable where a look-
out is not required of the motorman, and where an in-
dividual, having no right to be upon or near to the
tracks, negligently puts himself in a place of peril and
his peril is then discovered by the motor-man, in time,
to enable him by ordinary care to avoid injury to the
person and negligently fails to do so. Whatever may
be said of the logic of such a contention, and, however,
it may have been dealt with in other jurisdictions, it is
not in accordance with a long line of adjudications in

this jurisdiction. It has been held, that in actions for personal injuries from collisions with cars and trains, and an instruction similar to the second instruction, in the instant case, has been given, it is proper to give such an instruction as No. 3, where there is evidence upon which to base it, not only, in the states of case, where the motorman discovers the peril in which the injured party's negligence has placed himself in time for him, by the means available and with reasonable care for the safety of the passengers upon the car, to avoid the injury and fails to do so, but, likewise, in the states of case, where a duty rests upon the motor-man to maintain a lookout and he discovers or by the exercise of ordinary care could discover the peril, in time, to avoid the injury, and negligently fails to avoid the injury, when he sees the peril, or negligently fails to discover the peril, when it was his duty to do so, and he could have done so by the exercise of reasonable care. The instruction in the nature of No. 3, is given as a modification of the one similar to No. 2, so as to enable the jury to clearly determine the negligence, which causes the injury, upon the theory, that the negligence, of the one, who has the "last clear chance" to avoid the injury, is its proximate cause. C. & O. Ry. Co. v. Banks' Admr., 144 Ky. 137; L. & N. R. R. Co. v. McCoy, 81 Ky. 411; L. & N. R. R. Co. v. Collins, 2 Duvall 114; South Covington & Cincinnati Ry. Co. v. Cleveland, 30 R. 1072; L. & N. R. R. Co. v. Lowe, 118 Ky. 272; L. & N. R. R. Co. v. Schuster, 10 R. 65; I. C. R. R. Co. v. Murphy, 123 Ky. 787; Doll v. Louisville Railway Co., 138 Ky 486; Paducah Traction Co. v. Walker's Admr., 169 Ky. 724.

(d.) When the car had been stopped and the motorman descended from it and walked to the side of it and saw the mangled body of the decedent, he became partially overcome with the sight and sat down upon the front of the car apparently in great distress of mind, and about five minutes after the occurrence said: "I thought the boy would get out of the way." Objection was made to the proof of this statement of the motorman and it is now insisted that the court was in error in overruling an objection to it. It was competent evidence as a part of what is termed *res gestae,* which includes declarations made by an actor in the affair, substantially contemporaneous with the time of the act

under consideration, at the place of its occurrence and illustrative of the cause of its happening. Roberts v. Louisville Railway Co., 168 Ky. 232; Louisville Railway Co. v. Johnson's Admr., 131 Ky. 289; McLeod v. Ginther, 80 Ky. 408; I. C. R. R. Co. v. Houchins, 125 Ky. 483; L. & N. R. R. Co. v. Strange's Admr., 156 Ky. 439; L. & N. R. R. Co. v. Messer, 164 Ky. 218. It is insisted that the declaration was a mere opinion expressed by the motorman and therefore not competent as evidence for any purpose, but it is more than that and carries within it, in substance, the declaration, that the motorman saw the decedent before he was killed, and then was of the opinion that he would get out of the way of the car. It was not improper to admit it as substantive evidence for what it was worth.

The judgment is, therefore, affirmed.