# Cundiff et al. v. Nave et al.

(Decided May 29, 1931.)

DAVID A. McCANDLESS and M. C. REDWINE for appellants.

BENTON & DAVIS for appellees.

OPINION OF THE COURT BY JUDGE BRATCHER—Affirming.

This is an action instituted in the Clark circuit court by Bruce Taylor Cundiff, suing by his father, A. S. Cundiff, as next friend, to recover damages for personal injuries. It is alleged in the petition that the plaintiff in attempting to cross Main street in the city of Winchester, Ky., was struck and injured by an automobile owned by W. D. Nave and operated by his sister, Ann Virginia Nave; it being a family purpose car. It is alleged that she negligently and carelessly, and with disregard of the rights of plaintiff, drove against and over him; that, as a result of such careless and negligent driving, he was injured and this suit was instituted to recover damages in the sum of $20,000 and $680 special damages for hospital bill, medicine, doctor's bill, and nurse service.

The answer traversed the allegations of the petition and pleaded contributory negligence. The affirmative allegations of the answer were traversed by reply and this issue was submitted to a jury, and upon a final hearing the jury returned a verdict for the defendant. Motion and grounds for a new trial were duly filed, based upon the grounds that erroneous instructions were given and proper instructions offered were rejected; this motion was overruled. The plaintiff has appealed.

The accident happened on Sunday morning, April 28, 1929, on Main street between Lexington avenue and

Hickman street, just south of an alley which crosses the block about midway between Lexington avenue and Hickman street. Main street runs north and south. Miss Nave was driving a Standard Buick sedan belonging to her brother, W. D. Nave. She was traveling south on Main street, driving on the west side of the street. In the middle of Main street is a street car line. Main street is fifty feet wide at the place of the accident. It is twenty-two and a half feet from the curbing of the sidewalk to the nearest rail of the street car track. At the place of the accident automobiles were parked against the curbing on the west side of Main street at an angle. The boy had attended Sunday School at the Methodist Church, which is on the southwest corner of Hickman and Main streets, and upon the adjournment of Sunday School had started to Dinty Moore's place of business on the northeast corner of Lexington avenue and Main street. He left the church in a run, running across Hickman street up the sidewalk to within twenty or thirty feet of the alley at which place he left the sidewalk, went between the parked automobiles, hesitated, made two or three steps behind parked cars, then started diagonally southeast across Main street. He had proceeded about ten feet when struck by Miss Nave's car. He was knocked down, the car stopping almost immediately after hitting him. A crowd of people ran to his assistance and found Miss Nave with the brakes of the car tightly adjusted, the right front wheel on the boy's ankle, and the body lying almost directly under the front axle; his head being near the right rail of the street car line. The little boy was painfully injured but not fatally so. From the evidence it is made to appear that perhaps his injuries are of a permanent nature and that in all probability he will be, in a measure, lame, throughout life as a result of this acident. It appears from the evidence that Miss Nave was on her way to the Methodist Church; that she had driven up Lexington avenue, turned south on Main street, traveling on the west side of the street. Between Lexington avenue and the place where the accident occurred on the west side of the street, is, first, the People's Bank, Brown-Proctoria Hotel, the Winchester Garage, an eighteen-foot alley, an office building, and a residence. On the opposite side of Main street from Lexington avenue is Dinty Moore's restaurant, a pool room, Kum In Tea Room, Church of God, a residence, the alley, and the Presbyterian Church. This accident

happened between either the office building and the Presbyterian Church or the residence and the Presbyterian Church. Both the office building and residence face the Presbyterian Church on the opposite side of the street. Traffic on Main street in Winchester is controlled by electric light signals—"stop" and "go" signals. There is such a signal at the intersection of Main street and Lexington avenue and one at Main and Hickman streets.

The plaintiff introduced witnesses who testified as to what occurred at the time of the accident and immediately prior thereto. Homer Botts, one of the witnesses introduced by the appellant, testified that just immediately before the accident he was standing at the gas tank in front of Kings Garage; that he saw Miss Nave pass the garage; that she swerved her car slightly towards the west curbing, as if looking for a place to park, and then went southward. He further stated that at the time she was not going fast, "say fifteen miles per hour"; that he judged she increased her speed to twenty or twenty-five miles an hour by the time she had the accident. He did not see the accident which happened forty or fifty feet south of the garage. The appellants introduced Mr. Ed Clelland, who saw the accident. He was standing on the steps of the Presbyterian Church, which is some distance back from the sidewalk on the opposite side of the street from where the accident occurred. He says that the appellant came out from between the parked cars, turned south, took three or four steps behind the parked cars, and then started diagonally across the street in a southeastern direction. He says that the car of Miss Nave was about ten or twelve feet from him when he started across the street in front of her; that she was going about ten miles or a little more per hour; that he was hit just after he started diagonally across the street. He states that the boy was knocked down but that the car stopped at once before it ran over him. The only other evidence introduced by the appellant was by father and mother, Dr. Bush, and Taylor Bartlett. Dr. Bush testified as to the injuries of the young man and, without discussing the injuries in detail, we will say that they were painful, and such as to perhaps incapacitate this boy, in a way, all his life. He was under the care of physicians and special nurses for several months and then for a long period of time after that was compelled to go in a wheel

chair and is now unable to engage in the sports of boys his own age by reason of the injury, he being unable to place his heel on the ground, but walks upon the front part of his foot caused by the contraction of the muscles in his lower leg. The father of the boy testified as to the boy's injury and to a statement made by Miss Nave immediately after the accident that if she had been looking forward instead of for a place to park she might have avoided the accident. His mother testified that she saw Miss Nave at the hospital, and that she said, "I was looking for a place to park and did not see him." The attorneys for the appellees objected to these statements in so far as they applied to W. D. Nave. The court sustained the objections and admonished the jury that these statements should not be considered against W. D. Nave. Mr. Cundiff, Homer Botts, and Taylor Bartlett made a test by using a car similar to the one driven by Miss Nave to ascertain at what distance a boy could be seen ten and a half feet from the curb as was appellant in a car approaching as was Miss Nave. This test showed, according to their testimony, that the boy could be seen seventy-five feet away. That is a brief statement of evidence as introduced by the appellant. At the conclusion of the appellants' testimony, the appellees moved the court for peremptory instructions which were overruled.

Miss Nave testified that she was driving her brother's car on her way to the Methodist Church, that there were cars parked on the side of the street, and that she was looking for a place to park her car; that she was driving slowly by the parked cars; that appellant darted out from between two of the parked cars right in front of her. She says that she went only three or four feet before she struck him after first seeing him. That she stopped her car immediately before it ran over him. Mr. W. D. Nave testified and admitted the ownership of the car and said that it was used by his sister as a family purpose car, he knowing nothing of the accident. The appellees introduced some seven or eight witnesses who were on the street and witnessed the accident and the action of the parties immediately prior thereto, one of these witnesses being Mrs. Sadie McCormick, who testified that she and her husband were in a parked car just a few feet south of the accident on the west side of the street. That at the time of the accident her husband was slowly backing his car out from the parking place and she

was looking out for him; that she saw Miss Nave's car coming and that the child darted out and ran into the car and "hit it that way (snapping her finger), that quick"; that the first she saw of the little boy was as he went by the rear end of her car "darted by and right then he hit the car." She says that her car and the Nave car were probably two or three steps apart and that the little boy darted out between the cars; that he did not stop but ran right into the Nave car. These statements are corroborated by some other witnesses who were present, or near the accident.

The appellants rely upon two grounds for a reversal of the judgment.

(1) That the court should have given an instruction as to the speed of Miss Nave's car at the time of the accident predicated upon the idea that the accident happened in a closely built-up business portion of the town.

(2) That the court erred in giving an instruction submitting to the jury the degree of care to be exercised in crossing a street between intersections.

We will discuss these questions in the order in which they are presented by appellant's brief. There is a map or diagram filed with this record showing Main street from Lexington avenue to Hickman street. Main street appears to be the chief business street of the town of Winchester. It further appears from the map that while the business section of this street is not far away, the place where the accident did actually occur is not in the closely built-up portion of that street. From the evidence in this record the closely built-up portion of that street ends in the alley; that south of the alley both sides are composed of residences and churches with the one exception, the office building on the corner of Main and the alley. The instruction asked for by the appellants is based upon section 2739g-51, Kentucky Statutes. The statute reads:

"No operator of a vehicle upon a public highway shall drive at a greater speed than is reasonable or proper, having regarded for the traffic and the use of the highway, provided that

"(1) Where a highway passes through a closely built up business portion of any city or town, if the rate of speed of passing automobiles thereon exceed fifteen miles per hour it shall be prima facie evidence of unreasonable and improper driving."

The appellants complain that an instruction covering that point should have been given, and offered one which is made a part of the bill of exceptions and is before us. The offered instructions read:

"Where a highway passes through a closely built up business portion of any city or town, if the rate of speed of passing automobiles thereon exceeds fifteen miles per hour, it shall be prima facie evidence of unreasonable and improper driving, and if you believe from the evidence that the accident in question occurred in a closely built up portion of the city of Winchester, and that defendant's car was being operated at a greater rate of speed than fifteen miles per hour, such rate of speed would be unlawful unless you further believe from all the evidence in the case that it was not unreasonable or improper under the circumstances in this case."

That instruction was refused and none was given upon the speed of the car. A number of cases are referred to in which an instruction similar to the one offered and based upon that section of the Statutes have been directed and approved in cases of automobile accidents occurring in the closely built-up business portions of towns and other places. Moore v. Hart, 171 Ky. 725, 188 S. W. 861; Kappa v. Brewer, 207 Ky. 61, 268 S. W. 831; Wight v. Rose, 209 Ky. 803, 273 S. W. 472.

It is unquestionably the law, as approved by this court, that, had the evidence shown this accident occurred, within that portion of the town designated by the section of the Statutes, supra, it would have been reversible error for the court to refuse the instruction offered by the appellant, but neither the evidence nor the map introduced and used at the trial and made a part of the record shows that the accident occured in the closely built-up business section of Winchester. Conversely, it is very evident that the accident occurred outside that portion of the town. The only evidence that the speed exceeded twenty miles per hour was by Homer Botts, who admits he did not see the accident. Hence upon that showing, it was not error of the court to refuse the giving of instructions upon that point.

The second ground is that the court erred in giving instruction No. 2 submitting to the jury the degree of care to be exercised by appellant in crossing between

street intersections. The instructions covering the main issued in this case are as follows:

"INSTRUCTIONS

"Bruce Taylor Cundiff v. W. D. Nave, etc.

"1. The Court instructs the jury that at the time and on the occasion described in the evidence, it was the duty of the driver of the car which collided with plaintiff to have the car under control, to run it at a reasonable rate of speed, considering traffic conditions, and surrounding circumstances, to keep a lookout for pedestrians and vehicles upon the street, and to exercise ordinary care to avoid injury to them; and if you believe from the evidence that she failed to discharge any of these duties and that by reason of such failure her car ran upon or against plaintiff, Bruce Taylor Cundiff, and injured him, your verdict should be for plaintiff unless you believe as set out in instruction numbered 2.

"2. The Court further instructs the jury that if they believe from the evidence that it is more dangerous to cross or attempt to cross a street between crossings or intersections than at crossings or intersections, then it was the duty of the plaintiff, Bruce Taylor Cundiff, in going upon and attempting to cross Main Street at the place and at the time he did so to exercise such increased care coummensurate with such increased danger as a person of ordinary prudence of his age, intelligence and experience would usually exercise under like or similar circumstances for his own safety, and, if the jury believe from the evidence that the plaintiff on the occasion mentioned in the evidence failed to exercise such increased care for his own safety, and that such failure on his part caused or helped to cause and bring about the collision in which he was injured, the jury should find for the defendants, although they may believe from the evidence that Miss Nave failed in the duty placed upon her by the first instruction, and unless they believe as set out in the fourth instruction.

"3. (a) If you believe from the evidence that at the time and on the occasion complained of, the plaintiff, Bruce Taylor Cundiff, ran out upon the

street from behind a parked car and appeared in the path of the on-coming machine so suddenly that its driver, Miss Virginia Nave, in the exercise of ordinary care, could not have stopped her car or changed its course in time to have avoided injury to him with the means then at hand and under her control had her car then been running at a reasonable rate of speed; (b) or if you believe from the evidence that at said time and place the said Bruce Taylor Cundiff, was himself negligent and that his negligence caused or helped to cause or bring about the collision in which he was injured, the law is for the defendants and you should so find, unless you further believe as set out in the fourth instruction.

"4. Although you may believe from the evidence that plaintiff, Bruce Taylor Cundiff, suddenly emerged upon the street from behind a parked car and ran into the path of defendant's car, or that he was guilty of contributory negligence as set out in instruction numbered 2, yet if you further believe from the evidence that the driver of the machine, Miss Virginia Nave, saw or by the exercise of ordinary care, could have discovered his peril in time to have avoided injury to him, with the means then at hand, and within her control, had her car been running at a reasonable rate of speed, you should find for plaintiff."

It is argued that the second instruction should not have been given. It is in the evidence that the traffic on Main street in Winchester is controlled by "stop" and "go" electric signals. It is true no ordinance was introduced requiring pedestrians to observe these signals or to cross at regular intersections. A driver had a right to expect every other person to observe these regulations, a breach of which, under circumstances set out in the second instruction, would be negligence. The instruction submitted to the jury the question, "whether it was more dangerous, etc.," and if they should find it was, then the appellant was under greater care to look out for his own safety; his failure to do so was negligence, unless they should further believe Miss Nave could have, by the exercise of ordinary care, discovered his peril in time to have avoided it, by means at her hands and in her control, as set out in the fourth instruction.

In the case of Ross v. Louisville Taxicab & Transfer Co., 202 Ky. 828, 261 S. W. 590, 591, the court directed and approved an instruction in practically the same terms as the one here. In that case the court said:

"The court will then add to the fifth instruction defining ordinary care these words: 'If it is more dangerous to cross a street between intersections than at the intersection a person, so crossing the street, should exercise such increased care in proportion to the increased danger, as a person of ordinary care and prudence would ordinarily exercise under like circumstances.'"

It is argued by appellants, if the court follows the rule laid down in the Ross Case, it must condemn the one here. This attack is leveled at the separate instruction. It is said that in the Ross Case the qualification as to increased hazard was directed to be made an addenda to the regular instruction on contributory negligence. We fail to see how adding it to an instruction, or incorporating it in a separate instruction with the negative qualification of No. 4, prejudiced the rights of the appellant.

The reason is followed further and instruction criticized by saying the giving of this instruction was tantamount to another instruction on contributory negligence; that they were clearly separate; and that undue emphasis was placed upon that circumstance. No more emphasis was placed upon appellant's duties than upon Miss Nave's duties by the fourth instruction, which expressly qualifies instruction numbered 2. The instruction by being separate placed no greater burden upon appellant than if made a part of instruction numbered 3 defining contributory negligence, and is not discordant with the rule laid down in the Ross Case, supra.

The instruction given by the court very clearly and aptly presented to the jury the law of the case as interpreted in a number of cases comprehending both the theory of the plaintiff and the defendant. Goodwin v. Miller, 210 Ky. 407, 276 S. W. 117; Myers v. Cassity, 209 Ky. 315, 272 S. W. 718, 719; Cumberland Grocery Co. v. Hewlett, 231 Ky. 702, 22 S. W. (2d) 97; Runge v. Haller, 236 Ky. 423, 33 S. W. (2d) 317; Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. (2d) 727; and a number of other opinions in automobile accidents cited in the above cases.

56

We have carefully examined this record and analyzed the instructions in the light of the criticism leveled at them. We conclude that no error was committed. Therefore the finding of the jury is conclusive. The judgment is affirmed.