## Clere's Administrator v. Chesapeake & Ohio Railway Company et al.

(Decided March 23, 1934.)

(As Modified on Denial of Rehearing April 27, 1934.)

WATT M. PRICHARD and WAUGH & HOWERTON for appellant.

BROWNING & DAVIS for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Thirty-second street in Ashland runs north and south. It is crossed by two railroad tracks of the appellee, the northerly track being used for west-bound trains and the southerly track for east-bound trains. These tracks approach Thirty-second street from the east in quite a curve. Thirty-second street is paved with brick. To the south of the railroad tracks it is 20 feet wide; to the north it is 16 feet wide. This latter part of the street is located a little further to the west than the part to the south of the tracks, and hence the crossing at Thirty-second street is constructed on the bias in order to meet the offset between the two parts of the street. The crossing for vehicles is constructed of macadam. There is to the east of this macadam crossing a walk constructed of wood for the use of pedestrians. Between this walk and the macadam crossing is a portion of the tracks left in their natural condition. There is a joint in the southern rail of the northern track of the railroad. This joint is immediately adjacent to the macadam crossing. Wires for the purpose of carrying the electric current that works the automatic warning signals erected at this crossing reach around this joint from the rail on the one side to the rail on the other. On the night of December 6, 1930, appellant's decedent, Raymond D.

Clere, was driving a Buick sedan in a northerly direc-
tion along Thirty-second street towards this railroad
crossing. In the car with him was his brother-in-law,
Dock Banks, whom Clere was taking to the street car.
The machine had been acting queerly, jumping and
bucking; perhaps because the engine was cold and the
carburetor not working properly. As they approached
the railroad crossing, Banks, who was seated on the
front seat next to Raymond Clere, noticed that a red
flasher light erected by the railroad at this crossing for
the purpose of warning travelers of the approach of
trains and which flashed off and on while trains were
within the block in which this crossing was located was
flashing. About the same time he noticed a light down
the tracks towards the east, and heard a bell ringing.
He remarked to Raymond Clere that the red lights were
flashing and that he thought he heard a train coming.
Clere made no response but drove his car onto the
crossing. When the car got on the northern track of
this crossing, it stalled and Clere was unable to make it
go any further. Banks seeing a train coming from the
east on the track upon which they were stalled, jumped
out of the machine and with waving arms ran up the
track about 35 or 40 feet when the engine passed him.
The engineer of the train, who claims he was keeping a
lookout, says that about this time he discovered the
machine stalled on the track and immediately did all he
could to stop the train and did so within 175 feet. The
train at that time was going about 15 miles an hour and
the undisputed proof shows that the stop which this
engineer made was a very good stop indeed. Of course,
the engine hit the automobile and knocked it down the
track. When the train came to a stop, the tender was
yet on the crossing and the front trucks of the baggage
car had just passed over the joint in the rails to which
we have heretofore referred. The engineer got off his
engine and went forward to see if any one was in the
automobile. He found no one in it, but hearing a groan,
he turned and discovered that Clere was lying by the
joint in the rails with his leg cut off. The signs of blood
and flesh about the joint in the rails unerringly indi-
cate that it was at this point the leg was cut off. Clere
was taken to the hospital where he died in a day or so.
Before he was taken away from the place of the acci-
dent, he remarked to one of his rescuers that his foot

had caught in the wire. That was evidence to show that the wires to which we have referred were twisted, pulled, and mashed and that at least one was broken. It is quite evident that the deceased got out of his machine on the side opposite to that of the driver and in endeavoring to step over the rail to get out of the way of the on-coming engine caught his foot some way in the wire and was thrown, the engine and tender and baggage truck passing over the leg thus caught across the rail. There was evidence to show that the macadam crossing had become full of holes called "duck nests" and was not in a good condition for travel; but there is no evidence that this condition of the crossing caused the automobile to stall. After the death of Clere, the plaintiff, Gaylord B. Clere, was appointed his administrator and brought this suit to recover for the alleged negligent killing of his decedent. On the trial after the plaintiff had closed his case establishing the facts as above stated, and the additional fact that despite the curve in this track the light of an engine coming from the east towards the west would light up this crossing where the automobile was stalled when the engine was yet 400 feet away, and that one on an engine if keeping a lookout could discover the plight of an automobile stalled on this crossing when the engine was 400 feet away, the court peremptorily instructed the jury to find for the appellee and from the verdict found in accordance with that peremptory instruction and the judgment entered thereon, this appeal is prosecuted.

The lower court rested its peremptory instruction on the ground that appellant's decedent in going upon the track when he had been informed of the approach of the train not only by the red flasher signal but also by his companion Banks was guilty of such contributory negligence as a matter of law as denied his administrator any recovery for his death. It is difficult to see where any negligence of the appellee, except possibly that soon to be mentioned, was the proximate cause of this accident. There is no evidence that the condition of the crossing caused the car to stall. The evidence is that the flasher signal was working and there is no contradiction of the fact that the bell on the engine was ringing. There was no proof that a speed of 15 miles an hour at this point was an unreasonable or negligent rate of speed under the circumstances. There was no evidence that the crossing as constructed was not amply

sufficient for the uses of it to be reasonably expected. It is clear that Raymond Clere found himself in the predicament he was as the train bore down upon him because though informed of the approach of that train, he chose to try to beat it across the crossing though he also knew his car was behaving badly. But though Clere's predicament as thus described was of his own making, yet there was evidence to establish, if the jury believed it, that the engineer had he been keeping a proper lookout could have discovered the plight of this machine and possible occupants when his engine was yet 400 feet away from the crossing. Since as a matter of fact the engineer stopped his train within less than 200 feet, the proof warranted the submission of appellant's case to the jury under the last clear chance doctrine. Louisville R. Co. v. Broaddus' Adm'r, 180 Ky. 298, 202 S. W. 654, and cases therein cited. The appellee argues that there was no evidence to show that the machine stalled on the track when the engine was yet 400 feet away. In this counsel is in error. Dock Banks testified that he discovered that the train was coming as it got around the curve—the "last curve onto the crossing"—and that he was then getting out of the car, which was then stalled on the track. The evidence discloses that this curve was a full 400 feet away from the crossing where this car was stalled. Further, it must be remembered that the machine had stalled before Banks jumped out of the machine into a depression, then up on the wooden walk and then down again beside the tracks along which he ran some 35 or 40 feet before the engine passed him. This train was going 15 miles an hour and a calculation and reasonable estimate of the time that it took Banks to do all these things before the engine passed him would warrant the jury in putting this train back at least 400 feet from the car when it stalled. Though the engineer said he was keeping a lookout and did not see the car until he got within 30 feet of it, yet if the jury believed the testimony that this machine could have been seen 400 feet away had the engineer been keeping a lookout, it would then be warranted in disbelieving the story of the engineer that he was keeping a lookout. The evidence, if believed by the jury, would further warrant the conclusion that had the engineer been keeping a lookout, he would have had 200 feet within which to run and determine that the machine was stalled or probably so and yet have 200 feet within

which to stop, more than enough as determined by the stop he did make. All this being true, it is plain that there was some evidence to take this case to the jury under the last clear chance doctrine, for which reason the court erred in giving the peremptory instruction it did. The judgment is reversed for proceedings consistent with this opinion.