## Smith v. Ferguson.

(Decided Nov. 27, 1934.)

LAWRENCE S. POSTON for appellant.

STEINFELD & STEINFELD for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appellant, George W. Smith, a seventy year old .colored man, was struck and painfully injured by the automobile of the defendant, Dr. John P. Ferguson. The accident occurred about 3 o'clock in the afternoon, April 5, 1933, in front of the plaintiff's home upon the north side of Chestnut street near Sixteenth street in Louisville. A suit for damages resulted in a verdict for the defendant.

The plaintiff's evidence is that he and three others were together crossing to the south side of the street

between intersections, going to an automobile parked on that side. Each of the men testified that they looked up and down the street before starting across and there was no automobile approaching. Smith testified that when he was about the north rail of the east-bound street car track, which would put him slightly beyond the center of the street, he looked around and the defendant's automobile was within three feet of him, and that he attempted to jump back out of the way, but was struck and knocked about fifteen feet. Williams testified that he was crossing just in front of Smith and hearing somebody holler, "Watch the car," he looked around and saw the approaching machine about seventy-five feet away. He turned to see where Smith was and called to him and then jumped forward and saved himself. Nichols, who was talking to Williams as they were crossing the street, testified that just as they entered upon the east-bound car track he saw the car and called "Look out," and saved himself by stepping forward quickly over to the side of the parked car. Harry Smith, son of the plaintiff, was just behind him, and he testified to the same experiences, except that he was out of the line of the approaching car. The evidence of the plaintiff's witnesses is that the defendant's machine was traveling from thirty-five to forty-five miles an hour and that no horn or signal was sounded.

The defendant is also an elderly man. His machine was being driven by a young lady employed as his office attendant. He was on the rear seat of the car, and testified that it was going about twenty-five miles an hour with the street clear of traffic. About all he knew of the immediate occurrence was that the machine stopped when it struck Smith. The testimony of Miss Martin, the driver, is that she was going about twenty miles an hour and saw two men standing in the middle of the street between the two "sets of car tracks" talking. When forty or fifty feet from them she sounded the horn, and assuming they heard it she came on but slackened speed. Just as she reached them Smith stepped out in front of her car and it barely touched him. She applied the brakes and stopped after skidding two or three feet. She saw the parked machine on the south side of the street but did not see the other two men who say they were walking just in front of Smith and his son. A pedestrian on the sidewalk testified he thought the driver of the car sounded the horn and ap-

plied the brakes at the same time. He saw Smith start across the street with another man and pause a moment between the rails of the east-bound car track. He tried to get out of the way of the car, but there was not room enough between him and the parked automobile for the defendant's machine to pass through. In rebuttal Smith testified that he was not standing in the street but kept on walking until hit by the machine.

It is argued by the appellant that since there was testimony of six witnesses showing the speed of the defendant's car to have been thirty-five to forty-five miles and that no horn was sounded, and only the defendant, his driver, and one other testified that the speed was only twenty or twenty-five miles an hour and that the horn was blown, the defendant did not sustain the burden of showing that the speed was not the proximate cause of the accident, which occurred in a residential portion of the city (section 2739g-51, as amended by Laws 1930, c. 79) and therefore the verdict must be regarded as flagrantly against the evidence. In reaching a conclusion from evidence, the probative effect is not to be regarded quantitatively nor under a numerical process of calculation, but by a qualitative measure or by its weight in the sense of testing by balancing its relative quality. The jury holds the scales and is given the right by law to esteem the evidence of one witness as sufficient to overbalance a multitude. The conflicting evidence made a case for the jury, and we cannot agree that the verdict is flagrantly against the evidence.

However, we do concur with the appellant that it was error not to instruct on the theory of discovered peril or under the last clear chance doctrine. The instruction offered by the plaintiff, following one submitting the issue of contributory negligence, is in this form:

"On the other hand, if the jury believe from the evidence that the defendant, by his agent, the driver of the said automobile, saw, or by the exercise of ordinary care could have seen, the position of peril of plaintiff a sufficient distance ahead of defendant's said automobile that by the exercise of ordinary care and the use of the means at his command he could have stopped his said automobile, slacked its speed, or changed its course in time to have avoided striking plaintiff and negligently failed so to do, then the law is for the plaintiff and you will so find."

548

The plaintiff was entitled under the circumstances to this instruction or to one like it in substance. The presentation of evidence already made requires no deductive analysis. It seems sufficient to say that it is of the nature which the court has heretofore regarded and now regards as entitling the plaintiff to the benefit of the humane doctrine that, though he may have been in fault, if the one who injured him realized his peril, or through culpable carelessness was oblivious to his danger, and had an opportunity by the exercise of due care to avert the accident, he should have done so and his failure to embrace the final chance of avoiding it made him responsible for the consequences. Louisville Railway Company v. Broaddus' Adm'r, 180 Ky. 298, 202 S. W. 654; Manwaring v. Geisler, 191 Ky. 532, 230 S. W. 918, 18 A. L. R. 192; Ross v. Louisville Taxicab & Transfer Co., 202 Ky. 828, 261 S. W. 590; Mullins v. Cincinnati, N. & C. Ry. Company, 253 Ky. 156, 68 S. W. (2d) 790, and cases cited therein.

As to the care required of one crossing a street between intersections, the instruction given was in the exact language criticized in Ross v. Louisville Taxicab & Transfer Co., supra. A proper form was set out in that opinion. The instruction copied in Cundiff v. Nave, 240 Ky. 47, 39 S. W. (2d) 471, is in substantially the language suggested and approved in the Ross Case, except that it related to the duty of a child and not an adult. This form, it seems to us, presents more accurately the duty of a pedestrian under the circumstances.

The judgment is reversed.