# King's Administratrix v. Louisville & N. R. Co.

(Decided March 19, 1937.)

MARSHALL B. HARDY for appellant.

WOODWARD, DAWSON & HOBSON and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

On January 25, 1935, William King, a successful and energetic farmer more than sixty years of age, was living near the place on the railroad where he was killed by one of appellee's trains. After his death his widow qualified as personal representative, and on July 10, 1935, instituted suit seeking to recover damages. It was charged in the petition that Mr. King's death was caused by the operation of a freight train by appellee, its agents and servants, in a grossly negligent and careless manner.

Appellee answered denying the allegations of the petition and affirmatively pleaded that deceased was

injured alone by his own negligence. A reply controverted such allegation; issue was thus joined, and after proof had been introduced by appellant the court sustained appellee's motion for a directed verdict, the jury following the court's direction. Judgment was accordingly entered, an appeal prayed and granted. The question presented for review is as to the correctness of the court's ruling.

There is little dispute as to the facts. Both parties, as appear from arguments made in brief, agree as to the manner in which Mr. King met his death. The accident happened at or near Medora Station in Jefferson county. A Mr. Phillips operated a coal yard in the vicinity of the station. At the point where the accident happened there were three tracks; one the main line, another a passing track or siding and from the siding there ran what is called a business track or spur into the Phillips' coal yard. These tracks all ran approximately east and west. On this day the train held a carload of coal to be placed on the business track of Mr. Phillips' yard, and in order to thus place the car it was necessary for the engine to pull out 27 of 42 empty cars from the switch and set them over on the main track. This movement left 15 cars on the passing track, which was next to Phillips' coal yard. As soon as the carload of coal was placed on the spur it became necessary to place back on the switch track the empty cars which had been taken out.

While the above movements were being performed, a flagman went to the rear of the cars left on the passing track. The end of these cars, of course, were farthest from the engine. Just shortly after Darst the flagman, went back to the rear end of the empty cars he observed Mr. King over near the Phillips' coal office. Witness says that Darst observing Mr. King said, "I'll bet there's a man from Big Clifty." Evidently Mr. King heard this remark, as he at once went over to where Darst was stationed and the two began a conversation. One witness says that from the movement of his hands, Mr. King must have been pointing out to Darst the lines of his farm. No one was near enough to hear the conversation, but it was carried on until the time the impact came which resulted in Mr. King's fatal injury.

Witnesses say that when Mr. King went over to where Darst was standing, he stepped on the switch track, either on the ties outside or directly inside the rail, about 18 inches or not more than 4 feet (according to the witness testifying) from the rear of the empty cars, and with his back toward them. He was standing talking to Darst when the engineer completed the movement of placing the coal car and had gone on the main to get the 27 empty cars for the purpose of replacing them on the switch track. According to the witnesses Mr. King was still standing there when the engineer backed the 27 cars on the siding. When this was done the result was to create a loud noise, and the stationary cars were forced back toward Mr. King. As the impact came Darst shouted, ''Look out,'' and according to the nearest eye witness Mr. King must have stepped toward the rail farthest from where he was standing, or started to jump or run directly down the center of the track. One witness says he was run over on the west side of the track—the one farthest from his position when the impact came. Mr. King was knocked down, and as best we gather from the evidence the wheels or a wheel of a car ran over him, killing him instantly.

Counsel bases his claim for a reversal mainly, are sufficient to show negligence. It is said it was not shown that the brakes were set on the cars left standing on the switch when the string of cars were taken out. This may have been true, but no such fact was attempted to be proven by appellant. It is also argued that it was the duty of the flagman to know as a matter of custom that when the cars had been cut off from a siding, then replaced against cars left standing, there would occur a jolt and movement of the 15 cars. That thus knowing, it was the duty of Darst to warn Mr. King of his perilous position.

Counsel argues several grounds which he insists however, on what is known as the last clear chance rule, which—although Mr. King might have been and was a trespasser—made it the duty of those engaged in the operation of the train, under certain conditions, to have so operated it as to avoid the accident. If this duty was placed on Darst, it is shown that as soon as he discovered the danger to Mr. King he did warn him.

It is shown that the engine was 42 car lengths ahead of the car which caused Mr. King's death. In this situation it appears that it would have been impossible for Darst to have signaled the engineer, and if Darst had so attempted, the engineer would not have received the signal. If the contrary is true, there is a total lack of evidence to so show. The real peril did not arise until the impact of the cars came, and then there was a warning. From the proof it seems that Mr. King could have avoided this very unfortunate accident by taking one, or at the most two, steps toward Darst. However, it is clear from the proof that, perhaps being confused, through no fault of appellee, Mr. King stepped either ahead of the last car, down the track or across the track from where Darst was standing.

This accident did not occur on a crossing. Those in charge of the train's movement owed no lookout duty to deceased. The only duty owed by them was, after discovery of the situation in which Mr. King had placed himself, to perform all acts within their power with the means at hand, to prevent or avert the injury. There is an entire lack of evidence which in anywise shows any act of negligence in this respect on the part of appellee.

We have read the cases cited by appellant, among them Clere's Adm'r v. Chesapeake & O. Railway Co., 253 Ky. 700, 70 S. W. (2d) 16; all of them correctly stating the law and its application to the situation in each case; none of them fit the case at bar. More nearly applicable, as to the rule of law in cases where a person is discovered to be in a place of peril, or where the danger is not actually discovered but could or should have been, is the case of Chesapeake & O. Railway Co. v. Conley's Adm'x, 261 Ky. 669, 88 S. W. (2d) 683, and cases cited therein. However, this case does not call for a discussion of the rule from either standpoint suggested, since a thorough search of the record fails to disclose any proof of a negligent act on the part of those in operation of the train at the time of the accident.

Nor is there any act of negligence on the part of the flagman shown. If it be as argued that the flagman failed in any duty imposed upon him by the law,

such failure is not shown by the facts. It is to be noted that the sole duty of Darst was agreed to by appellant. This stipulation appears in the record:

> "It is stipulated between the plaintiff and defendant that W. E. Darst, the flagman who was standing at the rear of the cut of cars referred to in the evidence, was the regularly employed flagman of the Louisville & Nashville Railroad Company, and his sole duty at the rear end of the train was to protect the rear end of the train from on-coming trains."

There is no claim that the injury came from a train coming toward the rear of the cars. In this case it is not difficult to conclude that Mr. King was a trespasser; the contrary is not argued. It is also as readily concluded that he placed himself in and continued to occupy a dangerous position, and without discussion as to whether or not such act on his part would deprive him of the right to require the operators of the train to exercise care for his safety, we are of the opinion that there is an entire lack of proof to show any negligence by way of appellee's failure to act after discovery, or of failure to discover his position at the time of the accident, and in time to have averted the danger with such means as they had at their command. This was an unfortunate accident, but from a reading of the proof it appears to us that the accident was solely from the negligence of Mr. King. Hence we are of the opinion that the court below properly refused to submit the case to the jury, and the judgment is accordingly affirmed.