# Cross v. Clark.

May 28, 1948.

Rehearing denied October 5, 1948.

Robert F. Vaughan for appellant.

Jones, Keith & Jones for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

There have been three trials and two appeals of this case. At the first trial held on March 11, 1946, J. W. Clark obtained a verdict against Gilbert Cross, trading and doing business as E. D. Cross & Son, for $15,672.90 for injuries sustained in an accident which occurred on June 22, 1945. The verdict was set aside by the trial court because the testimony was insufficient to show that

the injury was permanent. A second trial was had on June 20, 1946, and the plaintiff recovered a judgment for $14,238.40 which was reversed by this court because the evidence failed to establish negligence on the part of the defendant. The case was remanded with directions that the defendant's motion for a peremptory instruction should be sustained in the event that the evidence on another trial should be substantially the same. Cross v. Clark, 304 Ky. 676, 201 S. W. 2d 884, 885. The third trial was held on October 7, 1947, and the jury returned a verdict in favor of the plaintiff in the sum of $25,749.50. The defendant's motion and grounds for a new trial was overruled, and he has appealed. Appellant is again insisting that his motion for a peremptory instruction should have been sustained. The soundness of his position turns on the weight to be given the testimony of Hunter P. Sparks who testified for the first time on the third trial. Was his testimony sufficient to fill the interstices in the evidence pointed out in the opinion on the former appeal?

The injury to appellee resulted when a quantity of iron screens or gratings, which had been stacked by appellant against metal columns, toppled over and fell upon appellee who was working a few feet from the base of the screens. The negligence relied upon was the alleged failure of appellant to stack the screens in a safe manner. In the opinion on the former appeal we said:

"We have closely examined all the evidence of all the witnesses who professed to have any knowledge of the method employed by Cross in the disposition of these gratings after they had been dismantled by him. Without exception, these witnesses stated that the gratings had been tied at the top with heavy wire so as to fasten them to the upright metal support columns where they stood until the accident occurred. Not one witness said that they were left untied by appellant at the time they were stacked. * * *

"So far as the record discloses, there was no proof whatever to show that appellant Cross or any of his agents ever untied or unloosed these gratings or ever knew they had been untied by anyone after they had been properly stacked and tied by appellant about two

weeks before the accident. During the interim between the stacking and the accident they were, of course, unloosened by some one. Otherwise, they would not have fallen on appellee. But whether they were unloosened by appellant or by some other contractor or by Reynolds Metals Company or by some, unidentified, meddling stranger, the courts and the jury have been left only to ponder in the darkness and silence of the mysterious unknown.''

And further:

''The record of this case does not show that appellant had any duties except those of dismantling carefully the property of Defense Plant Corporation and of disposing of the same, likewise carefully, in a place to which the appellant was directed by higher authority. All the evidence of this case shows that those duties were fully performed by appellant.''

On the third trial the evidence was substantially the same as the evidence on the second trial save for the testimony of Hunter P. Sparks. He testified that he was a fellow worker of appellee, employed by the same contractor, James E. Smith & Company; that he was present when the wire screens or gratings were removed and stacked by appellant's employees; and that they were not tied to the columns of the building until after the accident occurred. His testimony was in direct conflict with the testimony of appellant's employees on the crucial issue, to wit, were the gratings tied to the metal columns when they were stacked? The evidence satisfactorily established that the place where the gratings were stacked was rendered unsafe and dangerous to men working near by if the gratings were not securely tied. Appellant argues that Sparks' testimony stands impeached not only by his own testimony but also by the records of his employer, and in support of his argument that it should be wholly disregarded cites several cases, including the recent case of Couch's Adm'r v. Black, 301 Ky. 24, 190 S. W. 2d 681, holding that a plaintiff is not entitled to go to the jury if his evidence consists of statements of alleged facts which are inherently impossible and at variance with well established and universally recognized physical laws. What was said in these cases has no application to the facts of the

present case. All of the witnesses who testified on the subject were indefinite as to the time when the gratings were stacked at the elevator shaft. Several testified that they were stacked about two weeks before the accident. Clifford Fugit, foreman of the crew that stacked the gratings, testified that as each grating was brought to the elevator shaft it was tied to the columns, and he was then asked these questions and gave these answers:

"Q. That was about a week before the accident happened? A. No, sir; it was not a week before the accident happened.

"Q. When was it? A. They was tied up when we put them there.

"Q. Was that about a week before the accident? A. I don't recall now whether it was or not."

The witness Sparks, after stating that he was a steam fitter and worked in the same crew with appellee just before the accident, testified as follows:

"Q. Do you remember certain screens being stacked on the first floor against the elevator shaft? A. I do.

"Q. Were you there the day they were stacked? A. Yes, sir; I was.

"Q. Did you see the men stack them? A. Yes, sir.

"Q. I don't believe you knew who they were? A. There were so many working there, I could not say which they were.

"Q. Were you on the floor when these screens were being stacked? A. I was.

"Q. Will you tell the jury whether or not they were tied by the people who stacked them? A. The screens were not tied until after the accident happened at no time.

"Q. Do you remember how long before that accident these screens were set up there? A. Oh, probably —I could not say exactly, but not over a week, if they were there that long."

At another point he said:

"They were not there over a week at the most, to start with, before they fell. I don't know—I got to working out in another part of the building."

Appellant introduced the records of Sparks' employer, James E. Smith & Company, and they disclosed that Sparks began working for James E. Smith & Company on Tuesday, June 19, 1945. The accident happened on Friday, June 22, 1945, or on the fourth day of Sparks' employment. It is insisted that the records of his employer completely destroyed the effect of Sparks' testimony that he was present when the gratings were taken down and stacked, and establish its falsity. This is upon the theory that the evidence establishes without contradiction that the gratings were stacked prior to June 19. All of the witnesses were testifying from memory after a great lapse of time, and they were indefinite in their estimates of the time the gratings had been stacked prior to the accident. Fugit, the foreman in charge of the crew that performed the work, was asked if the staking was done about a week before the accident, and he answered: "No, sir, it was not a week before the accident happened." At another point in his testimony, in answer to a similar question, he said: "I don't recall now whether it was or not." Sparks testified positively that he was present when the gratings were stacked against the columns of the elevator shaft, and, concerning the time they remained there before the accident, said: "I could not say exactly, but not over a week, if they were there that long." He was subjected to a long and severe cross-examination, but remained unshaken. Whether or not his testimony was true was a question for the jury to determine, and the jury's prerogative in that respect may not be usurped by the court. His testimony was not manifestly untrue, incredible or impossible nor was it contrary to any physical facts. The evidence preponderated in favor of appellant's claim that the gratings were carefully stacked and tied and that this occurred prior to Sparks' entry on the scene, but the jury chose to believe the evidence supporting appellee's theory that the gratings were not tied. The appellant would have us pass upon Sparks' credibility as a witness and declare him unworthy of belief, but that would necessitate an invasion by the court of the jury's functions. The determination of the weight of

conflicting evidence and of the credibility of witnesses rests exclusively within the province of the jury. It may believe any of the witnesses in whole or in part, and may accept the testimony of one set of witnesses to the exclusion of that of another or the testimony of one witness as against the testimony of a number of witnesses. Thomas v. Smith, 302 Ky. 636, 195 S. W. 2d 274; Irvin v. Madden, 281 Ky. 7, 134 S. W. 2d 942; Huber & Huber Motor Express v. Martin's Adm'r, 265 Ky. 228, 96 S. W. 2d 595; Smith v. Ferguson, 256 Ky. 545, 76 S. W. 2d 606. In Cheatham v. Chabal, 301 Ky. 616, 192 S. W. 2d 812, 815, the testimony of the plaintiff stood alone and was contradicted not only by the testimony of a number of witnesses but also by his own previous written statement, yet it was held that the evidence was sufficient to take the case to the jury. In the course of the opinion it was said:

"If the courts take over the prerogatives of juries by saying that substantive evidence, undisputed by physical facts or nature's laws and not dependent upon mere hypotheses of experts, is insufficient to carry common law causes before juries for their decisions, then a lethal and devastating offensive against free, republican government has begun in earnest. It matters not that the litigant's theory is disputed by probabilities or by an opposing array of outnumbering witnesses against him. The measuring scales of the common jury must weigh these probabilities and these numerical contracts and then record the truth as derived from men's frequently fallible judgments."

It is argued that the appellee failed to prove that the negligence of the appellant was the proximate cause of his injuries, but this question was disposed of in the former opinion when the judgment was reversed for the sole reason that there was no evidence tending to show the gratings were not tied when they were stacked. There was no evidence of an efficient intervening cause such as would short-circuit the appellant's negligence in stacking the gratings in a dangerous manner and render it remote and not the proximate cause of the accident.

It is finally argued that the verdict is excessive. Appellee, Clark, was 42 or 43 years old and had an ex-

pectancy of more than 25 years. He was earning $84.50 a week, or at the rate of approximately $4,500 a year. He suffered a compound fracture of the tibia and fibula, and at the time of the last trial, two years and three months after the accident, had been unable to work. His leg was in a cast from June 22, 1945, to February 9, 1946, and he was then on crutches for six or seven months. The medical testimony is to the effect that his injuries are permanent. Dr. Charles F. Wood, an orthopedic surgeon, examined appellee on September 3, 1947, at the request of appellant, and testified concerning his disability:

"I felt that his residual disability would amount to about forty per cent disability of the left lower extremity, or twenty per cent disability to the individual as a whole. * * * His principal disability was stiffness of the foot and ankle and the weakness of the muscles of the leg and thigh, with some slight stiffness of the knee."

It is clear from appellee's own testimony and that of the physicians who testified that he will never be able to follow his former occupation of a steam fitter-welder. His earning capacity in the kind of work for which he is fitted by training and experience has been totally destroyed. His special damages, consisting of loss of time and medical and hospital bills, alone amounted to nearly $11,000 at the time of the last trial, and in a little more than three years after the trial will have amounted to as much as the balance of the sum awarded him. This leaves out of account any award for mental suffering and physical pain. We do not find that the award is out of accord with awards which have been approved by this and other courts in cases involving somewhat similar facts. A collection of cases on the subject may be found in Warfield Natural Gas Company v. Wright, 246 Ky. 208, 54 S. W. 2d 666. See, also, notes in 46 A. L. R. 1230, and 102 A. L. R. 1125.

The judgment is affirmed.