## Long's Ex'rs et al. v. Bischoff.

April 21, 1939.

Eugene Hubbard, Judge.

844

A. M. MARRET and WOODWARD, DAWSON & HOBSON for appellants.

ALPHA HUBBARD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Reversing.

Appellee, Patrick Bischoff, instituted this action in the Jefferson circuit court against appellants Annie Peabody and Fidelity & Columbia Trust Company and D. H. Long, the latter two being joint executors of the last will and testament of Nellie J. Long, deceased, to recover of them damages in the sum of $1407.85 for the alleged wrongful and forcible entry upon his premises which he held as tenant, and taking possession of, destroying and converting to their use various items of growing crops and other farm products, including certain farm implements owned by appellee. We will refer to appellee as plaintiff and to the appellants as defendants according to their respective positions in the lower court.

The substance of plaintiff's petition is that on January 1, 1936, he rented from Nellie J. Long a certain farm in Jefferson County, Kentucky, known as Bashford Manor Farm, consisting of approximately 300 acres; that under the terms of the rental contract or lease, which was verbal, plaintiff was to have possession of the entire farm except the dwelling house upon same, for the year 1936; that he was to cultivate and raise crops of corn, hay, potatoes, wheat and vegetables upon said land and pursuant to said verbal contract he took charge of the land and did plant and cultivate about 40 acres of corn, 32 acres of wheat and a lot of vegetables and hay; that under the terms of the contract plaintiff was to receive one-half of said farm products and Nellie J. Long the remaining one-half, the latter to pay one-half of the expenses of harvesting the crops. He stated that the wheat crop had been harvested and disposed of by Nellie J. Long in her lifetime and that settlement was made between her and this plaintiff as to the wheat crop. He stated that on the 11th day of July, 1936, Nellie J. Long died leaving a last will and testament in which she nominated and appointed the defendants Fidelity & Columbia Trust Company and D. H. Long as

executors of her estate and they qualified as such executors and are now and have been at all times mentioned herein acting as such executors of said estate; that Annie Peabody is a daughter of Nellie J. Long and one of the devisees and heirs under the will of Nellie J. Long, deceased.

For his cause of action plaintiff alleged that soon after the death of Nellie J. Long, the defendant executors and Annie Peabody forcibly entered upon the premises over the objections of plaintiff and ejected him therefrom and locked the gates to the cornfield and refused to permit him to harvest the various crops mentioned above; that the 40 acres of corn will produce more than 500 bushels and are of the value of $1 per bushel and that he is entitled to one-half of the corn or $250 in lieu thereof; and asked to recover $250 on that item. That before the death of Mrs. Long he had harvested 25 tons of hay of which he was entitled to one-half or 12½ tons, and that he had received 3 tons of his part of the hay, leaving a balance of 9½ tons in the barn on the premises and that the 9½ tons of hay were of the reasonable value of $15 per ton or a total of $142.50 which amount he asked to recover for the hay; that at the death of Mrs. Long he had upon the premises certain tools and machinery, naming them, and the value of each, in the total sum of $95; that in addition to the hay mentioned above which had been cut and harvested, there were other fields of hay which he had the right to harvest and that defendants, their agents and servants, took charge of the land and plowed under the hay and sowed the same in alfalfa; that plaintiff's part of that hay so destroyed was reasonably worth the sum of $283.75. That he planted 1¼ acres of turnips of the approximate value of $100, one-half of which he was entitled to receive, and that defendants wrongfully took charge of said turnips and cut down and destroyed the same to his damage in the sum of $50. That under the agreement with Mrs. Long he was entitled to pasture for four mules and horses upon the premises, but that defendants have refused him this right to his injury and damage in the sum of $50. He prayed judgment against defendants in the sum of $871.25, subject to a credit of $11.25.

Later, by amended petition plaintiff alleged that by mistake and oversight it was alleged in the original petition that the 40 acres of corn would produce 500

bushels, when in truth and in fact it produced not less than 1215 bushels, all of which was appropriated by the defendants to their use and the plaintiff's share of the corn was not less than 607½ bushels and was worth $1.25 per bushel or the total sum of $769.25. He also made further claim of $17.85 for certain other corn and fodder and prayed to recover the total sum of $1407.85.

The defendants filed their answer, the first paragraph of which was a traverse and by paragraph 2 they pleaded as a counter-claim and set-off against the plaintiff, a judgment for the sum of $115.93, which they had theretofore recovered against him.

By subsequent pleadings the issues were made and a trial had before a jury resulting in a verdict and judgment thereon in favor of plaintiff in the sum of $660, less the judgment of $115.93 plus interest, and a further credit of $11.25, the latter sum being admitted in the petition of the plaintiff. The defendants appeal.

A reversal of the judgment is insisted upon on various grounds, the first of which is that the oral contract sued on was made between plaintiff and Nellie J. Long on October 1, 1935, for the calendar year of 1936 and therefore comes within the statute of frauds, Section 470, Kentucky Statutes, and is unenforcible.

The evidence is more or less indefinite as to whether there was any express contract made between the parties for the rental of the farm for the year 1936. It appears that about October 1, 1935, plaintiff and Mrs. Long had a conversation with reference to the cultivation of certain crops on certain parts of the farm for the year 1936, and Mrs. Long told plaintiff "to go ahead and do the way he had been doing" or words of like import. However, if it be conceded that plaintiff had no express contract for the year 1936, or if he had one made previous to January 1, 1936, still he was in lawful possession of the farm at the time of Mrs. Long's death. It is shown by the evidence and not denied that plaintiff had lived on the farm since 1931 and if it be conceded that his tenancy for the year 1935 expired January 1, 1936, it must not be overlooked that he remained in possession of the farm for more than 90 days after January 1, 1936, without objections and acquiesced in by Mrs. Long.

Section 2295 of the Kentucky Statutes reads as follows:

"If, by contract, a term of tenancy for a year or more is to expire on a certain day, the tenant shall abandon the premises on that day, unless by express contract he secures the right to remain longer. If, without such contract the tenant shall hold over, he shall not thereby acquire any right to hold or remain on the premises for ninety days after said day, and the possession may be recovered without demand or notice, if proceedings are instituted within that time. But if proceedings are not instituted within said time, then none shall be allowed until the expiration of one year from the day the term of tenancy expired; and at the end of said year the tenant shall abandon the premises without demand or notice, or stand in the same relation to his landlord that he did at the expiration of the term of tenancy aforesaid; and so from year to year, until he abandons the premises, is turned out of possession, or makes a new contract."
In Mendel v. Hall, 13 Bush 232, it is said:

"This section [2295] is for the protection of both the landlord and his tenant, and where the renting is for a year or more, to expire on a *named day,* the tenant may abandon the premises within the ninety days next succeeding the expiration of the term, and is not liable for a longer period than he holds, unless by express contract he agrees to remain longer. He is made a tenant by sufferance for ninety days, and may be expelled from the premises by proper legal proceedings without notice, if instituted within that time, and if permitted to remain longer his tenancy as to time and price is regulated by the original contract, *provided the original renting was for a year or more, and to expire on a certain day."*

It follows, therefore, that plaintiff having remained in posssession of the farm for more than 90 days after January 1, 1936, his tenancy for that year became valid as much so as if he had had an express valid contract.

The evidence for plaintiff tends to show that soon after the death of Mrs. Long, which occurred July 11, 1936, defendant Mrs. Peabody entered upon the premises and virtually took possession of same, locked the gates against plaintiff, began tearing down fences, cut and destroyed the turnip crop and ordered plaintiff to

remove his work stock from the premises, and notified him to stay off the place. According to one witness Mrs. Peabody said that the quicker she got rid of plaintiff the better she would like it. It is insisted that even though plaintiff's rights were interfered with by Mrs. Peabody there is no evidence tending to show that the executors or any one of their employees acting under their authority participated in the acts complained of. Mrs. Peabody was asked and answered as follows:

"Q. Did you not the—your brother and the Fidelity & Columbia Trust Company, who I believe, are the executors under your mother's will, did they put you—let you do as you saw fit there? A. Yes sir.

"Q. And whatever you did, they O. K.'d and sanctioned? A. Yes sir."

It is also in evidence that through and by certain hired men or employees of Mrs. Peabody, she had the unmatured hay plowed under and the land sowed in alfalfa, and on September 19, of that year, the gates were locked against plaintiff and he was again told to stay out. Mrs. Peabody was asked if she had the gates locked and she said, "It should always have been locked," and after the question had been repeated a number of times and a like evasive answer given, she finally admitted that she had her foreman lock the gate and it stayed locked until the end of the year 1936. After that time plaintiff stayed off the premises until corn cutting time when he hired two men to cut the corn and after a part of it had been cut one of the men acting under the directions of Mrs. Peabody told them to get off the premises and stay off; that on the 8th day of August, 1936, Mrs. Peabody moved Pete Bauer on the farm and he took charge of it under Mrs. Peabody's orders. It is further shown that Mrs. Peabody put some cattle on the farm and about 15 head of them got into plaintiff's cornfield and stayed there three days.

There is an abundance of evidence, even including Mrs. Peabody's own evidence, that Mrs. Peabody was guilty of the most flagrant violations of the rights of plaintiff. She virtually took possession of the farm and plaintiff's crops, matured and unmatured, and there is no doubt that he did not only suffer great inconvenience and annoyance by reason thereof, but actually sustained considerable damage. While the evidence does not spe-

cifically show that the defendant executors went upon the premises themselves or actually placed others in charge thereof, as was done by Mrs. Peabody, yet, as we have pointed out, the evidence of their co-defendant, Mrs. Peabody, was sufficient to show that the executors directed, knew of and acquiesced in the conduct of Mrs. Peabody. In fact, she in substance stated in answer to counsel's question that the executor put her in charge of the farm and permitted her to do the things complained of and approved of and sanctioned them.

It is also insisted that the evidence does not support any finding for loss of the pasturing land, since the time complained of included the months of October, November and December, and that it is common knowledge that the land was not suitable for pasturing during these months. The instructions on this item did not fix any particular months or period of time, but only submitted to the jury the fair and reasonable rental value of the pasturing land, not exceeding the sum of $50. As we have already stated, the verdict not being itemized, we do not know what sum, if any, the jury found on this account. The jury might have taken into consideration the fact that the land was not suitable for pasturing purposes during the late fall months, and the sum found, if any, was reasonable. However, this is more or less speculative and perhaps erroneous. The instruction on this item should have limited the jury's finding to such times as the land was suitable or profitable for pasturing purposes.

It is next insisted that the instructions are erroneous in that they did not present to the jury the proper measure of damages. The court instructed the jury that if they find for the plaintiff they will award him such a sum in damages as they may believe from the evidence will fairly and reasonably compensate him for the fair and reasonable market value of one-half of the corn grown on the said farm during the year 1936, not exceeding on this account 407.1 bushels at not exceeding $1 per bushel, and not exceeding in all on this account the sum of $407.55 subject to a credit of $11.25, or a total net sum of $396.30; and such a further sum in damages as the jury may believe from the evidence will fairly and reasonably compensate plaintiff for the fair and reasonable market value of his one-half of the hay harvested on said farm and stored in the barn, not exceeding on this account 9½ tons at not exceeding $15

per ton, and not exceeding in all on this account the sum of $142.50; and such a further sum in damages as the jury may believe from the evidence will fairly and reasonably compensate plaintiff for the fair and reasonable market value of the hay contained in the wheat field which was plowed under by defendants, not exceeding on this account 17½ tons at not exceeding $15 per ton, and not exceeding in all on this account the sum of $262.50.

The alleged errors in the instructions are that they assume that all of the work had been done, and allows no deductions for cutting, shocking, hauling and storing the uncut corn, or for the labor in cutting, hauling and storing the unmatured hay which was plowed under by the defendants. The argument is that the measure of damages is not what the corn and hay would or might have brought once it had matured, been harvested and put on the market, but the true measure of damages is the value at the time of the breach of the contract.

It appears that plaintiff's cause of action is more or less a mixed one. He seeks to recover for the conversion of matured hay in the barn, which is in the nature of an action for trover and conversion; and also to recover damages for unmatured and unharvested crops and other privileges incident to his contract as tenant.

It appears to be the settled rule that the measure of damages in trover and conversion is the value of the property at the time and place of conversion. As to the alleged conversion or loss of the matured hay in the barn, the court should have instructed the jury in substance that if they believe from the evidence the defendants converted the hay in the barn to their use or to the use of another, or prevented plaintiff from getting the hay and as a direct and proximate result of the conduct of the defendants, plaintiff lost the hay, the jury will find for the plaintiff the reasonable market value of the hay as it was in the barn at the time of the conversion or loss. White Sewing Machine Company v. Conner, 64 S. W. 841, 23 Ky. Law Rep. 1125; Elswick v. Ramey, 157 Ky. 639, 163 S. W. 751; Weil v. Hagan, 161 Ky. 292, 170 S. W. 618.

The Court should have also instructed the jury that if they find for plaintiff for the destruction or conversion of unmatured and unharvested crops they will find the reasonable market value of such crops at the time

and place of such conversion or destruction, less the expenses of working, cultivating, harvesting and preparing same for the market.

In 17 C. J. p. 887, Section 190, the rule is thus stated:

"The measure of damages for the entire destruction of a growing crop is its value at the time and place of destruction. A similar rule applies in case of the destruction of a matured crop. The measure of damages to a growing crop which is injured but not rendered worthless is the difference between the value of the crop before and after the injury at the time and place thereof." See, also, Dutcktown Sulphur, Copper & Iron Co. v. Barnes, Tenn., 60 S. W. 593.

Upon another trial of the case the court will instruct the jury in substance as we have indicated above.

It also seems to be the weight of authority that a cause of action partly based on trover and conversion and partly on breach of landlord and tenant contract, a separate verdict should be found in each cause of action. 64 C. J. 1077; Kennet v. Robinson, 2 J. J. Marsh. 84; Baker v. Clark, 186 Ky. 816, 218 S. W. 280.

Upon another trial of the case the court will instruct the jury to specify in its verdict the sums found, if any, for the conversion or loss of the hay in the barn and also the sums found, if any, for the destruction or conversion of the unmatured or unharvested crops, and other matters based on the alleged breach of contract.

Complaint is also made that the court instructed the jury on the set-off and counterclaim, a matter not in issue in the evidence. It is doubtful that this instruction could have been prejudicial, but lest it should be confusing, it might be a safer practice to instruct only on matters in issue. Hutchison v. City of Maysville, 100 S. W. 331, 30 Ky. Law Rep. 1173.

For the reasons stated, the judgment is reversed and remanded for proceedings consistent with this opinion.