## Cheatham v. Chabal.

Feb. 19, 1946.

Pentecost & Dorsey for appellant.

Ollie James Cohen and Faust Simpson for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

The appellee, John Chabal, was hit and injured by an automobile operated by the appellant, William P. Cheatham, and from a judgment for $5000 in appellee's favor, the appellant has taken this appeal.

Grounds urged for reversal of the trial court's judgment are that (1) the jury should have been peremptorily instructed to return a verdict for appellant and that (2) the instructions to the jury were prejudicially erroneous and that (3) the damages awarded were excessive and that (4) appellee's attorneys were guilty of misconduct to the prejudice of appellant's substantial rights.

Appellee was a soldier stationed at Camp Breckenridge and near midnight on November 6, 1943, he left the camp to go northward along U. S. Highway 60 to visit his wife and child living in the small community of Waverly. He testified that he had drunk one glass of beer and had eaten a sandwich and had then proceeded out of the camp entrance and into the highway, crossing over the highway's center line a distance of 4 or 5 feet so as to walk on his left side and face traffic coming towards him in that lane of the highway. He said that he met, near the camp entrance and as he approached the highway, a soldier standing and vomiting. The front of the camp entrance was well lighted by two floodlights at or near the junction of the camp entrance with the highway. Appellee testified he was on his left half of the highway and that he had walked 50 or 60 feet northward when he was hit from the rear

without warning and knocked unconscious. The night was rainy and visibility was limited, according to all witnesses.

Appellee's evidence stood isolated and alone in support of his cause of action that he sought to establish upon appellant's negligence in driving on the wrong side of the highway.

On the other side of the case, appellant's evidence showed that his car was occupied by two other men in addition to appellant driver, the three of whom were friends and defense workers at Evansville. They had been to a lodge meeting at a place southward on Highway 60 and were making a late return to Evansville. These three testified the car was on their right-hand side of the highway and was moving at a speed of 20 or 25 miles per hour. Appellant's evidence indicated appellee suddenly loomed up at the left side of the car and in the right-hand lane of the highway going north, giving appellant no opportunity to stop before he ran into appellee. The car stopped on the right side of the highway facing northward and within 6 to 15 feet after it hit appellee, whose prostrate body was picked up by appellant and others in the left lane of the highway facing northward. Some of appellant's witnesses said they could detect an alcoholic smell on appellee as they lifted him out of the highway. All witnesses agreed that appellant's headlights were in good working condition, but they were shifted downward, which is commonly referred to as "dimmed," when the collision occurred, so that the lights' forward beam extended a distance of 100 or 150 feet, according to appellant himself.

There was no person present at this collision, except appellee soldier, appellant driver and the latter's two companions riding with him.

Among other discrepancies in the evidence, we find appellee soldier placing the collision just northward of the camp entrance while appellant and his companions place it just southward of that entrance, and we also find appellee soldier stating he was wearing his raincoat in the usual manner while appellant and his companions say the raincoat was thrown over the appellee's arm when he was lifted from the highway.

Appellee signed a written statement while he was still hospitalized, on November 17, 1943, 11 days after

the collision, stating he did not know what side of the road he was on when he was hit. But on the trial he could not remember having made or having signed the statement, which he admitted carried his signature. On the date of his written statement, appellee was under the influence of opiates and in a semi-conscious condition, according to his explanation on the trial.

An army captain testified he saw appellee near midnight on the night of the collision sitting on the ground in the rain and leaning back against a light pole near the camp entrance at Highway 60. This witness said appellee's head was stooped over and his eyes were closed and his raincoat was draped over his shoulders. The captain was in his car and was about 50 feet from appellee and did not dismount, but he proceeded to a telephone and called military police and asked that the soldier, whom he had seen and thought was intoxicated, be picked up and returned to his unit in the camp. When military police arrived, the collision had already occurred and this appellee, who was either the soldier seen by the captain or was an entirely different person, was lifted from the highway with a compound leg fracture and was taken to a hospital where he remained more than a year, when he was discharged from the army, presumably because of his physical disability.

We have concluded that this was a case for a jury's decision, not one for a peremptory instruction. While there was evidence on the trial, which was good in quality and substantial in quantity, tending to show appellee may have been intoxicated and may have stepped over into the northbound traffic lane of the highway when he met his injuries, yet appellee's own testimony placed himself in a sober condition and in the southbound traffic lane when he was injured by appellant's car traveling northward. There were no physical facts opposing appellee's theory, which was that appellant was traveling northward in the southbound traffic lane when the collision occurred. The jury chose to believe appellee's theory and we have held that the jury may believe all of testimony of either or any one of witnesses in whole or in part, since the jury may be convinced of the truth or falsity of witness' testimony whether from interest, wilfulness, or mistake. Huber & Huber Motor Express v. Martin's Adm'r., 265 Ky. 228, 96 S. W. 2d 595. It has also been declared by this court that a jury

may accept the evidence of one set of witnesses to the exclusion of that of another or the evidence of one witness as against the evidence of a number of witnesses and may also determine the weight as between the conflicting statements of a single witness. Irvin v. Madden, 281 Ky. 7, 134 S. W. 2d 942. It is also true that a jury may believe witnesses' testimony given on witness stand despite their previous contrary written statements. American Mut. Liability Ins. Co. v. Hartman, 254 Ky. 712, 72 S. W. 2d 429. These prerogatives of our juries, selected from among litigants' peers and gathered from over our countrysides, give the ancient, freeman's institution of trial by jury an authority and leeway that have been recognized through the centuries by the established courts of the land. If the courts take over the prerogatives of juries by saying that substantive evidence, undisputed by physical facts or nature's laws and not dependent upon mere hypotheses of experts, is insufficient to carry common law causes before juries for their decisions, then a lethal and devastating offensive against free, republican government has begun in earnest. It matters not that the litigant's theory is disputed by probabilities or by an opposing array of outnumbering witnesses against him. The measuring scales of the common jury must weigh these probabilities and these numerical contrasts and then record the truth as derived from men's frequently fallible judgments.

Since appellee pronounced a theory on the witness stand, which theory was unopposed by physical facts or the laws of nature and which was not dependent upon a mere hypothesis of an expert and which would, if true, clothe appellant in the culpable garments of negligent conduct on the occasion in question, the trial court did not commit error in refusing to peremptorily instruct the jury in appellant's behalf.

The appellant's next assignment of error, which he now urges as a ground for reversal, is that of one of the court's instructions to the jury to the prejudice of appellant's rights. The instruction was No. 1 and was given by the court on its own motion but exception was taken by appellant to the giving of it, according to the bill of exceptions. This instruction told the jury, inter alia, that it was the duty of appellant, upon this occasion, to have his "automobile equipped with two headlights, showing white, or tinted other than red, and of

sufficient power to clearly distinguish substantial objects for a distance of at least three hundred and fifty feet ahead. * * *''

Appellant admits that the provisions of KRS 189.040 required his automobile to have headlights of sufficient power to reveal clearly substantial objects at least 350 feet ahead. But he calls our attention to the provisions of KRS 189.030, the section immediately preceding the one requiring the 350 foot visibility, which says therein:

''Provisions as to distances that lights must be visible refer to visibility under ordinary atmospheric conditions.''

Appellant contends that KRS 189.040 and KRS 189.030 must be read and construed together and that the succeeding one must be limited by the provisions of its preceding one by a court in drawing an instruction defining a motorist's duties as to his lighting equipment.

We believe appellant's contention is reasonable and correct and that there is a difference between a motorist's duties as to lights under different weather conditions. We think this was the legislative intent in the adoption of these two sections of statutory provisions. Clearly, a pair of good, sufficient and legal lights might prove to be deficient in a blinding rain, fog or snow storm. The evidence in this case showed there were rainy and foggy conditions and that appellant's lights, shifted downward for a greater effectiveness, cast their beams a distance of 100 or 150 feet. We believe it was the duty of the trial court to have instructed the jury to the effect that the requirement of 350 foot visibility from appellant's headlights was conditioned upon the existence of ordinary atmospheric conditions upon the occasion mentioned, and the failure of the trial court to so instruct was, in our view, a prejudicial error. It is easy to assume that the jury may have taken the visibility distance of 350 feet required of appellant's lighting equipment as an unconditioned legal necessity under the court's instruction. And because of the evidence showing the appellant's lights were shifted downward in the rainy weather and only shone 100 or 150 feet, the court's instruction without condition, amounted to a peremptory instruction for appellee.

In view of the correspondingly increased duty of the driver under such circumstances, the words "weather conditions and" should be added to that part of Instruction No. 1 defining this appellant's duty as to speed so that this part of the Instruction will then read as follows:

"* * * and driving same at a rate of speed no greater than you shall believe from the evidence was reasonable and proper, considering weather conditions and the condition and use of the highway at that time and place * * *"

It has long been established by this court that it is the duty of the trial court to give a correct instruction in a civil cause when that trial court undertakes to enter upon the legal subject matter embodied in that instruction, even though it was not the duty of the court to have given any instruction whatever on that particular subject matter in the absence of a request therefor by a party to the cause. Louisville & N. R. Co. v. Stephens, 188 Ky. 1, 220 S. W. 746.

Since the judgment of the trial court must be reversed because of the prejudicially erroneous instruction given to the jury, it is not necessary for this court to consider or decide upon appellant's contentions relating to amount of damages and to the conduct of his opposing counsel. These two questions, which may not arise upon another trial, are reserved by the court without determination because necessity does not dictate their solution at this particular time.

For the reasons indicated herein, the judgment is reversed.