Beecher NIX et al., Appellants,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Jan. 25, 1957.

Rehearing Denied March 29, 1957.

S. M. Ward, Vernon Faulkner, Hazard, for appellants.

Jo M. Ferguson, Atty. Gen., David B. Sebree, Asst. Atty. Gen., for appellee.

CAMMACK, Judge.

In the latter part of September, 1955, a foreman of the Old King Mining Company discovered that 415 feet of ¾-inch copper wire were missing from one of the Company's mines. The Company's industrial policeman, James Holliday, was able to follow the markings left by the wire as it was dragged over the ground. The marks ended at the nearby home of Junior Nix. Junior and his 17 year old brother-in-law, Ivan Hughes, were arrested at Junior's home. Both made statements, later reaffirmed by them at the trial, to the following effect: Early in the evening of September 11, 1955, the defendants, Beecher Nix (Junior's uncle), Hiram Nix (Junior's father), and Homer Hollon came to Junior's home; they offered him and Ivan $15 each to help them take some copper wire from the mine. Sometime after 9:00 p. m. an agreement was reached and the five men left for the mine, returning after midnight to Junior's home, where they cut the wire up and placed it in a truck. Junior and Ivan never saw the wire again after the defendants left with it.

Hiram Nix, Beecher Nix, and Homer Hollon were indicted for grand larceny, tried on the charge, convicted, and each received a two-year sentence. On their trial, Junior's wife, Mable, testified that she heard the plans of the theft discussed in her home, saw the five men leave, and at 2:30 the next morning heard them return, but being in bed, she did not see either them or the wire. When cross-examined she stated she was working in the kitchen when the defendants first arrived, and could not hear any conversation before her husband and the others left. There was admitted also testimony concerning an admission made by Hiram Nix that he was involved in the crime.

The appellants contend that there was not enough evidence to take the case to the jury. They rely on Section 241 of the Criminal Code of Practice, which makes it mandatory that the testimony of an accomplice be corroborated by other evidence connecting, or tending to connect, the accused with the commission of the offense before a conviction may be sustained. It is the general rule that the wife of an accomplice may corroborate his testimony. 7 Wigmore, Evidence, section 2059 (3rd ed. 1940). This Court stated in Blackburn v. Commonwealth, 12 Bush 181, 75 Ky. 181, the only case we have found on this point, that:

"* * * it is only because of the express provision of the statute that the court has power to intervene and prevent the jury from finding even upon the unsupported testimony of the accomplice; and as it does not in terms declare that corroboration by the wife shall not be sufficient, we do not feel inclined to so extend it by construction as to render her corroboration ineffectual."

The argument is made also that on cross-examination, Mable Nix admitted she was unable to hear anything that was said concerning plans for the theft. If this had been all that was said by Mable, we would be inclined to agree that the evidence was insufficient to connect the appellants with the crime. On direct examination, however, Mable testified that she heard the details of the planned theft. This conflict clearly affects her credibility as a witness, but it is the jury's province

to determine the weight to be given her conflicting testimony. It may believe what was said on direct examination despite subsequent inconsistent statements. Durbin v. Banks, 314 Ky. 192, 234 S.W.2d 681; Cheatham v. Chabal, 301 Ky. 616, 192 S.W.2d 812.

■ Instruction No. 2 required the jury to believe beyond a reasonable doubt that the appellants unlawfully took the wire, and that its value was less than $20, before they could find them guilty of petit larceny. The appellants argue that this was prejudicial, because it put too great a burden on them, in that it required them to offer proof of substantial probative value in order to convince the jury that the crime of petit rather than that of grand larceny was committed. They misinterpret the instruction. The requirement of proof beyond a reasonable doubt did not refer only to the value of the property stolen. It covered the entire crime, and the burden of proof was placed upon the Commonwealth rather than upon the appellants. Instruction No. 2 was corollary to Instruction No. 1, which followed the usual instruction given in a trial for grand larceny. See Stanley's Instructions to Juries, section 925 (1940).

■ There was ample evidence to warrant the instruction on grand larceny and to support the jury's verdict. The mine foreman testified that 415 feet of wire had been stolen and that in his opinion its market value was $195. The appellants' proof to the contrary was negligible. On the record before us, we are unwilling to say as a matter of law that the Commonwealth failed to prove beyond a reasonable doubt that the value of the wire was more than $20.

■ The appellants urge finally that the trial judge erred in permitting the industrial policeman to testify concerning Hiram Nix' written confession to him. The record shows that on both occasions when the policeman started to implicate the other two defendants, objection was made and sustained. While a persistent course of examination, over the objection of opposing counsel and the adverse ruling of the trial judge, may constitute reversible error, see Louisville & N. R. Co. v. Payne, 133 Ky. 539, 118 S.W. 352, the record before us does not disclose such a situation. Each time the policeman began to involve anyone other than Hiram Nix, he was interrupted by the trial judge and admonished to state only what was told him about Hiram's own actions. We do not find in this case that the substantial rights of the appellants were prejudiced.

Judgment affirmed.