Fred SHEPPERSON, Appellant,

v.

KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.

Court of Appeals of Kentucky.

Dec. 13, 1957.

Rehearing Denied March 14, 1958.

James G. Begley, Danville, for appellant.

James F. Clay, James G. Sheehan, Jr., Danville, for appellee.

BIRD, Judge.

Appellant claims that he lost thirteen acres of tobacco when two housing barns were destroyed by fire. He was insured against such loss by the appellee and he filed this action to recover under the terms of the contract. It was admitted that the two barns were destroyed by fire and that the insurance contract was in full force and effect at the time. The insurer appellee, in effect, denied that the barns contained the tobacco as alleged. This was the paramount issue, questions of quality and value being dependent upon its determination. A jury heard the case and returned a verdict for the insurer. Appellant complains that the verdict of the jury is not supported by sufficient evidence and that the court erred in refusing to direct a verdict for him. He also complains that the court, over his objection, permitted the introduction of irrelevant and incompetent testimony to his prejudice.

The burden was on the insured to prove that the tobacco was in the barns at the time of the fire. The insured testified that the two barns were about a thousand feet apart and that they burned about 11:00 p. m. on November 30, 1954, and almost simultaneously. He testified that all of the tobacco was in the barns at the time of the fire. Some of his witnesses testified that they had seen large quantities of tobacco in the barns a few days before the fire. Some testified that they had seen the tobacco in the barns on Monday before the fire on Tuesday. Some testified that they had seen the tobacco during the day on Tuesday before the fire that night. Others of insured's witnesses testified as to the high quality of the tobacco and placed a value on it at about sixty-five cents per pound.

The insurer introduced a witness who testified that he saw tobacco being removed from the barn a few days before the fire. This witness, it appears from the record, was not too bright and contradicted his own statements rather substantially. The insurer introduced another witness who testified that he lived about twenty miles from the home of the insured and that the insured's son came after him and that he went to insured's place and helped to load some of the tobacco from the barns onto a truck that carried it away. This witness was impeached for truth by several witnesses. It was proven by insured that stripping was in progress and that, in one of the barns, six or seven rather large "coops" of tobacco were piled on the ground in the driveway of the barn. Two witnesses from the State Fire Marshal's office made an investigation while the premises were in the same condition as immediately after the fire. They testified that they saw no tobacco ash under the tin roofs that had fallen and covered the ground enclosed by the barns. One of insured's witnesses testified that "the ground was bare" under the tin even at the place where the coops were located. In rebuttal the insured denied that

any of the tobacco had been removed, as sworn to by insurer's witnesses, and he introduced witnesses who swore that they had witnessed the burning of tobacco barns and that little or no ash from tobacco was left.

Appellant takes the position that insurer's witnesses who claimed to have seen the removal of some of the tobacco were so thoroughly repudiated by contradiction and impeachment that the testimony offered by them is wholly void of probative value, and that the testimony offered by plaintiff's witnesses therefore stands uncontradicted. For this reason he contends that the verdict is not supported by the evidence and that such verdict could not have been returned except through passion and prejudice which he contends was engendered by the erroneous admission of testimony concerning previous marketing violations and penalties. The record imposes three questions: (1) Was appellant entitled to a directed verdict? (2) Did the admission of evidence concerning previous marketing violations and penalties constitute reversible error? (3) Was the verdict supported by sufficient evidence or was it the result of passion and prejudice?

We shall deal with these questions in the order stated. (1) As to the first question we cannot consider on appeal the trial court's order refusing a directed verdict because the record does not disclose the grounds given in support of the motion. CR 50.01; Whitesides v. Reed, Ky., 306 S.W.2d 249. However, the question may be substantially answered indirectly when we deal with the third question. Let us now look to the second question and consider the nature of the testimony about which appellant complains. It was proven, and admitted by insured, that all of the tobacco involved was "red card" tobacco and could not be marketed except on the payment of a penalty occasioned by insured's previous violation of marketing quotas. He insists that the testimony was irrelevant, incompetent and so highly prejudicial as to inflame the minds

of the jury against him. It may well be that such testimony was calculated to incite disfavor in the minds of the jurors but it was not error. In such case the payment of a penalty on each pound of tobacco sold constitutes a part of marketing costs. Appellant's loss could have been no more than the market value of the tobacco at the time of loss, less the penalty and other costs of marketing and preparation incident thereto. The testimony was therefore competent and relevant in determining appellant's actual loss. Commonwealth v. Masden, 295 Ky. 861, 175 S.W.2d 1004, 169 A.L.R.2d 101; Long's Ex'rs v. Bischoff, 277 Ky. 842, 127 S.W.2d 851; F. A. Bartlett Tree Expert Co. v. Stamper, 306 Ky. 311, 207 S.W.2d 752. (3) In answer to the third question we are of the opinion that the verdict is supported by sufficient evidence and is not the result of passion and prejudice on the part of the jury. The circumstances surrounding this case and the testimony about which appellant complains may have been sufficient to arouse a genuine distaste and create a prejudicial attitude against him. However, in order to nullify a verdict, it is not sufficient that testimony and circumstance be calculated to arouse the passion and prejudice of a jury. There must be something, or the lack of something, in the record to indicate that such passion and prejudice was the basis of the jury's decision. Certainly a verdict will not be adjudged to have been the result of passion and prejudice when there is other competent substantive evidence upon which the jury might reasonably have reached its conclusion. Such is the case here. Though the testimony of appellee's witnesses may be wrought with contradiction and though the witnesses may themselves have been thoroughly impeached for truth, and even without an effort toward corroboration, it is still credibility and weight that may be affected and nothing more.

In American Mutual Liability Insurance Company v. Hartman, 254 Ky. 712, 72 S.W.2d 429, 432, we find the plaintiff's written statement, deposition, and trial

testimony all in conflict, replete with contradictions on crucial points. The same applies also to the testimony of witnesses. Yet this Court said:

"In such state of case, a finding in favor of Hartman cannot be said to be flagrantly against the evidence, for under a familiar law, the jury had the right to believe the testimony of the witnesses as it was given by them while on the witness stand, despite their previous written statements, whether in one form or another. * * *

"The jury had before it the testimony of Hartman, his witnesses, and also their written statements and the deposition of Hartman given on May 7, 1930, which, if accepted by the jury, rendered their testimony of but little weight, if of no value. The power is not vested in this court in such circumstances to disregard the verdict of the jury and award a new trial, however much we might be convinced, if the facts were submitted to us, we would reach a different conclusion."

This case was followed in Cheatham v. Chabal, 301 Ky. 616, 192 S.W.2d 812. In Nix v. Commonwealth, Ky., 299 S.W.2d 609, 610, the Cheatham case was followed and this Court said:

"The argument is made also that on cross-examination, Mable Nix admitted she was unable to hear anything that was said concerning plans for the theft. If this had been all that was said by Mable, we would be inclined to agree that the evidence was insufficient to connect the appellants with the crime. On direct examination, however, Mable testified that she heard the details of the planned theft. This conflict clearly affects her credibility as a witness, *but it is the jury's province to determine the weight to be given her conflicting testimony. It may believe what was said on direct examination despite subsequent inconsistent statements.*" Durbin v. Banks, 314 Ky. 192, 234 S.W. 2d 681. (Emphasis ours.)

Under the foregoing authorities the jury could give much, little or no weight to the testimony of the contradicted and impeached witnesses. It must be admitted that the quality of such testimony is not superlative. However, in this case we do find pertinent and competent corroborating testimony given by representatives of the Fire Marshal's office. They testified that there was no tobacco ash where there should have been. Appellant's witnesses in rebuttal testified that there shouldn't have been any ash from the burning of the tobacco. This too was for the jury. It is our opinion that the evidence was sufficient to take the case to the jury. The jury has exercised its prerogative of weighing the testimony and judging the credibility of the witnesses and has found for the insurer. We are not inclined, under the ruling cases, to disturb its finding. We have given attention to other alleged irregularities but have found no prejudicial error.

The judgment is therefore affirmed.